

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-14-2000

# Brumfield v. Sanders

Precedential or Non-Precedential:

Docket 00-3275

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"Brumfield v. Sanders" (2000). *2000 Decisions.* Paper 235.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/235

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed November 14, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 00-3275

P. BRIAN BRUMFIELD
        Appellant

v.

SHERRI SANDERS; MICHELLE SHADDAY; BRENDA
DERR-BLAKENEY; M. JANE HUFF; CARLA MEYERS;
UNITED STATES OF AMERICA

On Appeal From the United States District Court
For the Middle District of Pennsylvania
(D.C. Civ. 98-cv-01482)
District Judge: Honorable Malcolm Muir

Argued: October 6, 2000

Before: BARRY, WEIS, and ROSENN, Circuit Judges.

(Filed November 14, 2000)

        Michael Marrone, Esquire (Argued)
        Marc F. Lovecchio
        Campana, Campana &
         Lovecchio, LLP
        602 Pine Street
        Williamsport, PA 17701
         Counsel for P. Brian Brumfield

Dulce Donovan, Esquire (Argued)
Assistant United States Attorney
Federal Building
228 Walnut Street
Harrisburg, PA 17108
 Counsel for United States of
America

OPINION ANNOUNCING THE JUDGMENT
OF THE COURT

ROSENN, Circuit Judge.

This appeal presents the uncommon scenario of a civil suit in a state court by a federal employee againstfive of his fellow employees, all of whom were employed by the United States Department of Justice, Bureau of Prisons ("BOP"). The plaintiff, P. Brian Brumfield, filed his complaint in state court alleging that he and allfive individual defendants were employed by BOP at the Allenwood Federal Correctional Facility ("FCI Allenwood"). The complaint alleged state tort law claims of conspiracy, prima facie or intentional tort, abuse of pr ocess and defamation against all five defendants. Brumfield's claims are predicated on written affidavits and oral statements given by the defendants in a 1996 investigation by the BOP Office of Internal Affairs ("OIA") with respect to Brumfield's unprofessional conduct.

As a result of the investigation, the war den disciplined Brumfield, who appealed the warden's action to the Merit Systems Protection Board ("MSPB"). The appeal was resolved by agreement. Brumfield then sued the individual defendants in the Court of Common Pleas, Union County, Pennsylvania. The defendants removed the case to the United States District Court for the Middle District of Pennsylvania pursuant to 28 U.S.C. S 1442(a)(1), which allows officers of United States agencies to r emove civil actions against them to a federal district court. Thereafter, the United States moved under the Westfall Act1 to

_____

1. The relevant provision of the W estfall Act states:

    The remedy against the United States pr ovided by [the Federal Tort

2

substitute itself for the individual defendants, asserting that the individual defendants were, at all relevant times, acting within the scope of their employment. The District Court dismissed the complaint on the recommendation and report of the magistrate judge. Brumfield timely appealed. We affirm, although on the primary issue on appeal we do so on grounds different than those of the District Court.2

I.

On appeal, the appellant makes three arguments. First, he argues that the district court erred in denying Brumfield's request for discovery on the scope of employment issue. Second, he contends that the district court wrongly determined that the individual defendants' challenged actions occurred within the scope of their employment. Finally, he maintains that the District Court erred in predicting that the Pennsylvania Supreme Court would not recognize a cause of action for prima facie or intentional tort.

II.

The threshold question in this appeal pertains to whether the plaintiff 's claim of tortious conduct occurred within the scope of the individual defendants' employment. Brumfield acknowledges that a federal employee is absolutely immune from common law claims of tortious conduct occurring within the scope of his or her employment. The Westfall

_____

Claims Act] for injury . . . resulting from the negligent or wrongful
act . . . of any employee of the government acting within the scope
of his office or employment is exclusive of any other civil action or
proceeding for money damages arising by reason of the same
subject matter against the employee . . . .

28 U.S.C. S 2679.

2. "An appellate court may affirm a result reached by the District Court on different reasons, as long as the record supports the judgement." Guthrie v. Lady Jane Collieries, Inc., 722 F .2d 1141, 1145 n. 1 (3d Cir. 1983)(citing Helvering v. Gowran, 302 U.S. 238, 245, 58 S.Ct. 154, 157, 82 L.Ed. 224 (1937)).

Act, also known as the Federal Employees Liability Reform and Tort Compensation Act, provides federal employees acting within the scope of their employment absolute immunity from damage liability on state law tort claims. See Melo v. Hafer, 13 F.3d 736, 739 (3d Cir. 1994). Under the Westfall Act, the Attorney General of the United States may certify, as was done in this case, that the employee was acting within the scope of his or her employment, and request that the United States be substituted as the only defendant.[3] See 28 U.S.C. S 2679(d)(1). However, the plaintiff correctly argues that certification by the Attorney General is only prima facie evidence that the alleged injurious conduct occurred within the scope of the federal employee's duties. See Schrob v. Catterson, 967 F.2d 926, 929 (3d. Cir. 1992); 28 U.S.C. S 2679(d)(2). Brumfield, therefore, requested of the District Court that he be permitted reasonable discovery fr om the individual defendants. The District Court, however, denied this request and decided without discovery and without a hearing on the question that the defendants wer e acting within the scope of their employment.

In denying discovery, the District Court noted that Brumfield had already engaged in extensive discovery relating to the scope of employment of the individual defendants in the MSPB proceeding and that he should not be permitted to duplicate those efforts in the present proceeding. In permitting the gover nment to substitute the United States as sole defendant, the District Court found that this argument had considerable merit in light of the absence of any response by the plaintif f. We believe that the District Court's rationale in the earlier stage of the proceedings logically applies with equal for ce to the plaintiff 's efforts to secur e discovery at this stage.

Moreover, the Attorney General's certification appears to have been based on the plaintiff 's complaint. The certification states, in relevant part:

> I have read the complaint and . . . upon the basis of the information now available to me with r espect to the

_____

3. The Attorney General has delegated her certification authority to the United States Attorneys. See 28 C.F.R.S 510; 28 C.F.R. S 15.3.

4

> incidents referred to therein, I am of the opinion that the [individual] defendants . . . were acting within the scope of their employment . . . pursuant to an official government investigation at the time of the conduct alleged in the complaint.

Brumfield v. Sanders, 50 F.Supp.2d 381, 385 (W.D. Pa. 1999). In a later affidavit, the Attorney General reiterated that her conclusion that the individual defendants were acting within the scope of their employment was based on the allegations in Brumfield's complaint.[4] The District Court opined:

> Permitting additional discovery when the Attor ney General's certification is not based on a dif ferent understanding of the facts than is reflected in Brumfield's complaint would undermine the intent of the Westfall Act to protect federal employees from responding to state law tort claims.

Brumfield nowhere contends that the Attor ney General misunderstood the allegations in the complaint. Our standard of review of questions concer ning the scope or opportunity for discovery is for abuse of discr etion. See Country Floors Inc. v. Gepner & Ford, 930 F.2d 1056, 1062 (3d Cir. 1992). We see no abuse of discretion in the District Court's refusal to permit additional discovery.

The District Court's discovery ruling does not end the matter, however, because Brumfield argues that the District Court erred as a matter of law when it held that the individual defendants acted within the scope of their employment during the OIA investigation. It is undisputed that whether they did or not is a matter of Pennsylvania state law. Pennsylvania has accepted the Restatement (Second) of Agency's definition of conduct "within the scope of employment." See Butler v. Flo-Ron V ending Co., 383 Pa. Super. 633, 646 (Pa.Super. 1989); Aliota v. Graham, 984

_____

4. Specifically, the Attorney General based her conclusion on the allegation that the warden encouraged female employees to report unprofessional conduct by male supervisors and that the defendants prepared the challenged written statements at the request of OIA investigators during the course of an official investigation.

F.2d 1350, 1358 (3rd Cir. 1993). According to the Restatement, "conduct is within the scope of employment if, but only if: (a) it is the kind [the employee] is employed to perform; (b) it occurs substantially within the authorized time and space limits [and] (c) it is actuated, at least in part, by a purpose to serve the master . . . ." Restatement (Second) Agency S 228.

Brumfield does not dispute that factors (a) and (b) are met in this case, but he contends that, because the defendants' accusations were motivated by personal animosity toward him, they were not intended to "serve the master." This argument, however , does not comport with Pennsylvania agency law. This Court has previously held that under Pennsylvania law, the mere existence of a personal motivation is insufficient to relieve the employer from liability where the conduct also benefitted him and was within the scope of employment generally. Eisenberg v. Gagnon, 766 F.2d 770, 783 (3rd Cir . 1985) (citing Yaindl v. Ingersoll–Rand Co., 281 Pa.Super. 560, 575–76 (not followed on other grounds)(1981)); Restatement (Second) of Agency S 236 (1958)). Here, the statements and affidavits of the individual defendants were given at the behest of OIA officials to assist them in their official investigation. Personal animosity, if any existed, was subsumed by the benefit that inured to employees generally at the Allenwood institution. If the OIA investigation revealed unprofessional conduct by Brumfield, the District Court noted that "appropriate discipline could be meted out and unprofessional conduct by a supervisor halted." Brumfield, 50 F.Supp.2d at 385.

Brumfield also contends that "the course of employment" does not include commission of unlawful acts or acts contrary to orders, policies, procedur es and standards of the BOP.5 Brumfield maintains that the individual

_____

5. The cases Brumfield cites to support this pr oposition construe the Pennsylvania Workmen's Compensation Act, specifically, when an injury occurs "in the course of employment" under the act. See Kozak v. Joseph Reilly Coal Co., 141 Pa.Super. 413 (1940); Garrahan v. Glaen Alden Coal Co., 135 Pa.Super. 307 (1939). They do not discuss Pennsylvania's common law of agency and are not relevant to this case.

6

defendants "lied during the course of an official investigation and lied on false affidavits." Thus, he argues that their actions were outside the scope of employment and therefore not protected by the W estfall Act. This argument too was properly rejected by the District Court. The Pennsylvania Superior Court has specifically held that "[the] liability of the employer may extend even to intentional or criminal acts committed by the servant." Butler, 383 Pa.Super. at 646. See also, Aliota, 984 F.2d at 1358 ("In the absence of any contrary decisions or pronouncements by the Supreme Court of Pennsylvania, we predict that that court would follow [Butler]").

Although the individual defendants were r equired to provide only truthful responses to questions posed in the investigation, "an act, although forbidden or done in a forbidden manner, may be within the scope of employment." Restatement (Second) of Agency S 230; Aliota, 984 F.2d at 1358. Under Pennsylvania law, even unauthorized acts may be within the scope of employment "if they are clearly incidental to the master's business." Shuman Estate v. Weber, 276 Pa.Super . 209, 216 (1980). Here, Brumfield's complaint asserts that during the course of the investigation, the individual defendants wer e encouraged to come forward and asked to and did sign affidavits which he alleged contained false facts about him. Thus, even assuming the statements were false, plaintiff 's allegation squarely makes the individual defendants' conduct incidental to BOP's business, and Brumfield proffered no evidence that the defendants' conduct was not motivated at least in part by a purpose to serve the BOP.

Finally, according to the Restatement, :

> it may be found to be within the scope of employment of a person . . . to accuse another of wrongful conduct or report to others the supposed wrongful conduct of [another] employee . . . . A servant having a duty to make such reports . . . to his employer . . . may subject his employer to liability for his untruthful statements.

Restatement (Second) of Agency S 247 cmt. e. See also, Aliota, 984 F.2d at 1359 (predicting that the Pennsylvania Supreme Court would adopt Restatement S 247). As the

7

district court noted, "[BOP's] policy makes clear that it was within the scope of Defendants' employment duties to cooperate with investigators of the [OIA] and provide potential information regarding any unprofessional conduct by Brumfield." Brumfield, 50 F . Supp.2d at 384. Thus, the defendants in this case conformed to the very duty contemplated by Restatement S 247 comment e, supra. We therefore conclude that the statements made by the defendants, even if false, were within the scope of their employment. Accordingly, the District Court committed no error in ruling that the defendants' conduct during the OIA investigation was within the scope of their employment.

III.

The primary and final issue in this appeal is Brumfield's contention that under Pennsylvania law, the individual defendants committed an intentional tort as defined in Section 870 of the Restatement (Second) of T orts and the District Court therefore erred in dismissing his complaint. Although the District Court dismissed all of the defendant's underlying claims against the United States, Brumfield only argues on appeal that it was error to dismiss his claim for intentional or prima facie tort as set forth in Count II of his complaint. This is consistent with his position in the District Court, where he objected only to the dismissal of his claim for intentional tort. The District Court r ejected his objection, predicting that when faced with the question, the Pennsylvania Supreme Court would not recognize a cause of action for intentional or prima facie tort as set forth in the Restatement. Under our analysis of the claim, there is no need for us to predict whether the Supr eme Court of Pennsylvania would recognize such a claim.

The Federal Tort Claims Act ("FTCA") bars actions against the United States for wrongful use of civil pr oceedings and defamation.6 Claims "arising out of . . . libel, slander, misrepresentation [or] deceit" ar e excepted from the United States's general waiver of sovereign immunity. 28 U.S.C. S 2680(h). Thus, defamation suits against the United States

_____

6. 28 U.S.C. S 2680(h) creates exceptions to the general waiver of sovereign immunity set forth in 28 U.S.C. S 1346.

are prohibited. In fact, cases from other circuits make clear that an individual who is defamed by a federal employee acting within the scope of his or her employment has no remedy due to the protections affor ded by the Westfall Act and the FTCA. See B & A Marine Co., Inc v. American Foreign Shipping Co., Inc., 23 F.3d 709, 714–715 (2d Cir. 1994); Alviles v. Lutz, 887 F.2d 1046 (10th Cir. 1989).7

In Count IV of his complaint, charging defamation, Brumfield alleged, inter alia, that the individual defendants "sign[ed] affidavits containing false facts" about Brumfield, "submitted written false statements of alleged misconduct" by Brumfield, and gave false oral statements about Brumfield to investigating OIA agents. This claim was dismissed in the District Court and was not appealed. Without any additional allegations, Count II incorporates by reference averments of the complaint, but asserts that the "defendants' conduct and statements as afor esaid are actionable as an intentional tort under Pennsylvania law and pursuant to S 870 of the Restatement (Second) of Torts." Brumfield's complaint does not allege any underlying facts in Count II that make his intentional tort claim different from his alr eady dismissed defamation claim or his conspiracy claim in Count I. Count IV , the defamation claim, contained no independent allegations of defamation but relies entirely on "the previous averments of the complaint," including Count I and Count II. Thus, the essence of his intentional tort cause of action is that the individual defendants made false statements about him that caused him economic harm and damage to his reputation. As such, it is precluded byS 2680.

Cases in other jurisdictions support our analysis."In examining a complaint, we are bound to look beyond the literal meaning of the language to ascertain the r eal cause of the complaint." Jimenez–Nieves v. United States, 682 F.2d 1, 6 (1st Cir. 1982). In Jimenez–Nieves , the court rejected a claim for pecuniary and non–pecuniary damages arising from the erroneous dishonoring of a Social Security check. Noting that the dishonoring of the check "implicitly

_____

7. Of course, defamation committed by a federal employee acting outside the scope of his or her employment may be actionable.

communicated defamatory statements about [the] plaintiff,"
then-Judge Breyer concluded that the claim"resound[ed] in
the heartland of the tort of defamation" and was barred by
S 2680. Id. at 6.

In Hoesl v. United States, 451 F. Supp. 1170 (N.D. Cal.
1978), aff 'd on different grounds per curiam, 629 F.2d 586
(9th Cir. 1980), a government employee sued the United
States and a government-employed psychiatrist for an
allegedly negligent report stating that the plaintiff suffered
a mental disability which made him unable to carry out his
responsibilities. In holding that the substance of the
plaintiff 's claim was defamation, the court stated that the
defamation exception to the FTCA could not be avoided "by
attaching a different label to the tort." Id. at 1174.

IV.

In conclusion, it is obvious upon examination of the
complaint in this case, that the anatomy of Counts I, II and
IV of Brumfield's complaint are the same. The effort to
separate them by draping them with differ ent dress and
labels fails to disguise their substantive similarity. For this
reason, Count II, like Counts I and IV, is barred by the
defamation exception to the FTCA.

Accordingly, the District Court committed no error in
dismissing the plaintiff 's entire complaint. The judgment of
the District Court will be affirmed. Costs taxed against the
appellant.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit