

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-29-2008

# Ismael v. Ali

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-1636

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Ismael v. Ali" (2008). *2008 Decisions.* Paper 1313.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1313

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No.07-1636
_____

TAREQ ISMAEL,
Appellant

v.

ABBAS ALI, Department of Management Eberely College of Business; MANTON
GIBBS, Department of Management Eberly College of Business; CAROL DRYE,
Department of Management Eberly College of Business, ROBERT CAMP, Eberly
College of Business, BHARAT DAS, Department of Management Eberly College of
Business, AMERICAN SOCIETY FOR COMPETITIVENESS; INTERNATIONAL
SOCIETY FOR COMPETITIVENESS; INDIANA UNIVERSITY OF
PENNSYLVANIA
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
D.C. Civil Action No. 99-cv-01932
(Honorable Gary L. Lancaster)
_____

Submitted Under Third Circuit LAR 34.1(a)
April 17, 2008

Before: SLOVITER, JORDAN, and ALARCÓN,* *Circuit Judges*.

(Filed:  April 29, 2008)
_____

OPINION OF THE COURT

_____

*The Honorable Arthur L. Alarcón, Senior Judge, United States Court of Appeals
for the Ninth Circuit, sitting by designation.

_____

ALARCÓN, *Circuit Judge*.

Tareq Ismael appeals from the order of the District Court granting summary judgment in favor of Abbas Ali and Manton Gibbs who are professors at Indiana University of Pennsylvania ("IUP"). The District Court granted Ali's and Gibbs's motion for summary judgment as to Ismael's claim for defamation. Ismael contends that the District Court erred in concluding that Ali and Gibbs were acting within the scope of their employment when they allegedly distributed defamatory letters about him. We affirm because we conclude that Ali and Gibbs were acting within the scope of their employment.

**I**

**A**

The facts set forth in Ismael's opposition to the motion for summary judgment demonstrate that he is a political science professor at the University of Calgary. Ali and Gibbs are professors at the Eberly College of Business at IUP.

In November 1998, all three professors were involved in a conference at the Eastern Mediterranean University in northern Cypress. Ismael and Robert Camp, Dean of the business school at IUP, were part of the committee that organized the conference. Ali and Gibbs acted as coordinators for the conference. IUP sponsored the conference along with other organizations, including the American Society for Competitiveness ("ASC")

2

and the International Society for Competitiveness ("ISC"). Camp, Ali, and Gibbs served as incorporators and officers for ASC and ISC.

The gravamen of Ismael's claim is that Ali and Gibbs were responsible for a series of letters which allegedly contained false statements that Ismael improperly handled funds collected for the conference. At the conclusion of the conference, these letters were sent first to Ismael, then to his employer, and also to conference participants. All of the letters were written on either ASC or ISC letterhead and signed by IUP employees. Gibbs signed the last four letters. In two of the letters, Gibbs signed them as "Conference Coordinator" and the "Conference Coordinator, American Society for Competitiveness." He signed the other two letters as "Professor and Conference Coordinator."

**B**

On January 15, 2003, Ismael filed an amended complaint against ASC, ISC, and five IUP employees, including Ali and Gibbs, seeking damages for defamation, civil conspiracy, intentional infliction of emotional distress, and false light. On November 17, 2003, the District Court granted in part, and denied in part, defendants' motions for summary judgment. Only Ismael's defamation claim against ASC, Ali, and Gibbs survived summary judgment. The defendants appealed on the basis that Ali and Gibbs were entitled to sovereign immunity.

This Court, in *Ismael v. Ali*, No. 03-4894, 141 Fed. Appx. 36, 2005 WL 1532443, at **1 (3d Cir. June 30, 2005), vacated the summary judgment ruling on the ground that it

was "concomitantly unable to ascertain whether [it had] appellate jurisdiction." This Court remanded the case with an instruction to "revisit the issue of sovereign immunity" and to "reconsider" Ali's and Gibbs's motion for summary judgment. *Id.* at **2.

On remand, the District Court reconsidered Ali's and Gibbs's motion for summary judgment. On January 31, 2007, the District Court granted summary judgment in favor of Ali and Gibbs on the basis that they were entitled to sovereign immunity. Ismael filed a timely notice of appeal.[1] *Ismael v. Ali*, No. 99-1932, 2007 WL 336286 (W.D. Pa., Jan 31, 2007). We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

## II

There is no dispute that District Court properly concluded that Ali and Gibbs are "employees of the Commonwealth." Under Pennsylvania law, "the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit . . . ." 1 Pa. Cons. Stat. Ann. § 2310. Thus, the question before us is whether Ali and Gibbs acted within the scope of their employment. If they did, then they are entitled to assert sovereign immunity.

Ismael argues that Ali and Gibbs were not acting within the scope of their employment with IUP when they sent the letters. First, he contends that they were writing the letters on behalf of ASC, not IUP. Second, Ismael maintains that they were writing

---

[1] On February 5, 2007, the District Court granted the parties' stipulation wherein Ismael agreed to dismiss his claims against ASC.

4

the letters in furtherance of a "personal vendetta" against him. Ali and Gibbs argue that both of these assertions are irrelevant to the appeal. "Our standard of review on an appeal from a grant of summary judgment is plenary . . . applying the same standard the District Court was required to apply." *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 535 (3d Cir. 2007) (internal citations omitted).

"Pennsylvania has accepted the Restatement (Second) of Agency's definition of conduct 'within the scope of employment.'" *Brumfield v. Sanders*, 232 F.3d 376, 380 (3d Cir. 2000). This Court explained:

> According to the Restatement, "conduct is within the scope of employment if, but only if: (a) it is the kind [the employee] is employed to perform; (b) it occurs substantially within the authorized time and space limits [and] (c) it is actuated, at least in part, by a purpose to serve the master . . . ."

*Id.* (citing Restatement (Second) of Agency § 228(1)); *see also Butler v. Flo-Ron Vending Co.*, 557 A.2d 730, 736 (Pa. Super. Ct. 1989) (adopting definition of scope of employment as set forth in § 228).

## A

Ali's and Gibbs's involvement in the conference was the kind of conduct that IUP employed them to perform. Camp, the Dean of the business school, testified at his deposition that IUP expected its professors to be involved in conference activities. He also testified as follows: "[V]irtually all activities of an academic scholarly nature are within their [Ali's and Gibbs's] scope [of employment], because *they reflect back on the*

5

*university*, so, I mean, almost on a weekly basis there's correspondence going out that I don't authorize . . . ." App. 380 (emphasis added). The record shows, IUP was one of the sponsors of the conference. IUP officials knew that Ali and Gibbs were involved in planning the conference. Ali's and Gibbs's participation reflected back on IUP. Although the allegedly defamatory letters were written subsequent to the conference, they concern conference financial issues. The District Court explained: "Looked at another way, had Ali and Gibbs not taken action to address possible improprieties in the handling of Conference funds, they would have been neglecting their duties to the participants and sponsors, including IUP, their employer." Ismael, 2007 WL 336286 at *4. We agree. It is apparent that Ali's and Gibbs's conduct "is the kind" they were "employed to perform." Restatement (Second) of Agency § 228(1)(a).

Ismael argues that Camp's statement that he did not "authorize" the first letter constitutes "IUP's official denial of involvement." However, Camp's testimony at deposition shows that not having authorized the letter is of no significance because IUP faculty often wrote letters without the need to seek his authorization.

**B**

There is no dispute that Ali's and Gibbs's conduct occurred "substantially within the authorized time and space limits." Restatement (Second) of Agency § 228(1)(b). Ismael does not make any contrary argument.

**C**

6

Ali's and Gibbs's conduct served, at least in part, the interests of IUP. Sections 226 and 236 of the Restatement (Second) of Agency, both of which are adopted by Pennsylvania, are applicable here. Section 226 provides: "A person may be the servant of two masters, not joint employers, at one time as to one act, if the service to one does not involve abandonment of the service to the other." *Coleman v. Bd. of Educ. of the Sch. Dist. of Philadelphia*, 383 A.2d 1275, 1279 (Pa. 1978) (adopting section 226).

Section 236 provides: "Conduct may be within the scope of employment, although done in part to serve the purposes of the servant or of a third person." *Yaindl v. Ingersoll-Rand Comp.*, 422 A.2d 611, 619 (Pa. Super. Ct. 1980) (adopting section 236) *modified on other grounds*, *Yetter v. Ward Trucking Crop.*, 585 A.2d 1022, 1026 (Pa. Super. Ct. 1991). The first comment to Section 236 illustrates that conduct taken both to "revenge a personal insult" and to get a job done faster is within the "scope of employment." Restatement (Second) of Agency § 236 illus. 1 (1958) (explaining that a servant is acting in the scope of employment when "the servant, although performing his employer's work, is at the same time accomplishing his own objects or those of a third person which conflict with those of the master.").

As discussed above, the facts, taken in a light most favorable to Ismael, show that IUP's interests were served by Ali's and Gibbs's involvement in the conference. Their involvement included planning the conference and writing letters to Ismael concerning post-conference financial matters. Ismael's argument that their involvement served the

7

interests of ASC does not change the fact that Ali and Gibbs also served the interests of IUP.

Likewise, Ismael's argument that Ali and Gibbs authored the letters as a "personal vendetta" against him also fails. Under section 236, even if Ali and Gibbs were taking revenge of a personal insult, they could have been serving their own interests, as well as the interests of IUP. *See, e.g,. Brumfield*, 232 F.3d at 380 ("This Court has previously held that under Pennsylvania law, the mere existence of a personal motivation is insufficient to relieve the employer from liability where the conduct also benefitted him and was within the scope of employment generally.").

**Conclusion**

Viewing the facts in light most favorable to Ismael, Ali and Gibbs were acting within their scope of employment with IUP when they wrote the post-conference letters: (1) they were engaged in "the kind" of work they were "employed to perform;" (2) the conduct occurred "substantially within the authorized time and space limits;" and (3) the conduct was "actuated, at least in part, by a purpose" to serve IUP. Restatement (Second) of Agency § 228(1). Therefore, the District Court did not err in granting summary judgment in favor of Ali and Gibbs on the basis that, as Commonwealth employees, they could assert sovereign immunity. 1 Pa. Cons. Stat. Ann. § 2310. For the foregoing reasons, we AFFIRM the District Court's order.