**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 21-1019
_____

MICHELLE MCDONALD-WITHERSPOON,
Individually and as adminstratrix of the estate of Kenyada Jones,
Appellant

v.

CITY OF PHILADELPHIA; WARDEN GERALD MAY; CORIZON HEALTH, INC.;
VIVIAN GANDY, MD; MARIAMMA SAMUEL, RN; JENNIFER MARCINKOWSKI,
MA; MHM SERVICES INC, a/k/a MHM Correctional Services, Inc.; DEBORAH
HARRIS-WHITE, LSW; CHERYL BLADWIN, MSW; AMBER E. BROWNE;
JEANETTE PALMER

_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-17-cv-01914)
District Judge:  Hon. John R. Padova

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
December 10, 2021
_____

Before:  SHWARTZ, PORTER, and FISHER, Circuit Judges.

(Filed: December 21, 2021)

SHWARTZ, Circuit Judge.

This appeal addresses whether the District Court correctly dismissed federal and state claims against the City of Philadelphia (the "City"), the Philadelphia Adult Parole and Probation Department ("PAPPD"), and probation officers Amber Browne and Janette Palmer arising from the death of an incarcerated adult who struggled with schizophrenia and depression. For the reasons set forth below, the District Court properly dismissed all claims, and we will therefore affirm.

I

Kenyada Jones had a history of mental illness, including schizophrenia and depression. He was arrested during a visit with his probation officer, Amber Browne, and her supervisor, Janette Palmer, and held at Curran-Fromhold Correctional Facility. While there, he overdosed on blood pressure medication and died.

Jones' mother, Plaintiff Michelle McDonald-Witherspoon, sued, among others, the City, PAPPD, Browne, and Palmer (collectively, "Defendants") in Pennsylvania state court, asserting violations of 42 U.S.C. § 1983, the Americans with Disabilities Act

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

("ADA"), 42 U.S.C. § 12101 et seq., the Rehabilitation Act, 29 U.S.C. § 701 et seq., and state law. After the case was removed to the United States District Court for the Eastern District of Pennsylvania, Defendants moved to dismiss the complaint. The District Court granted the motions in part and denied them in part ("First Order"). See McDonald-Witherspoon v. City of Philadelphia ("McDonald I"), No. CV 17-1914, 2017 WL 3675408 (E.D. Pa. Aug. 25, 2017).

Plaintiff filed an amended complaint that asserted largely the same claims but added factual allegations and additional defendants not at issue in this appeal. Defendants moved to dismiss the amended complaint, which the District Court granted in part and denied in part ("Second Order"). See McDonald-Witherspoon v. City of Philadelphia ("McDonald II"), No. CV 17-1914, 2018 WL 4030702 (E.D. Pa. Aug. 23, 2018).[1]

Following discovery, the City, Browne, and Palmer moved for summary judgment on the surviving claims, which the District Court granted ("Third Order"). See McDonald-Witherspoon v. City of Philadelphia ("McDonald III"), 481 F. Supp. 3d 424 (E.D. Pa. 2020).

Plaintiff appeals the portions of the District Court's orders concerning certain

---

[1] The District Court granted Plaintiff leave to file a second amended complaint but only to identify the names of additional defendants not at issue in this appeal. Plaintiff filed a second amended complaint, but the Court struck portions of it as exceeding the permitted amendments. Plaintiff did not appeal this order.

claims against the City, PAPPD, Browne, and Palmer.[2]

## II[3]

Plaintiff asserts that the District Court erred in its First Order, which dismissed (1) Plaintiff's § 1983 "deliberate indifference to serious medical need" claim against Browne and Palmer; and (2) Plaintiff's ADA claim against PAPPD. To determine whether dismissal under Fed. R. Civ. P. 12(b)(6) was warranted, we accept as true and recite below the complaint's relevant factual allegations.

In her complaint, Plaintiff alleged that Jones was a "disabled individual, having a permanent and serious disability diagnosed as paranoid schizophrenia, schizoaffective disorder, depressive disorder, bipolar disorder, psychotic disorder and/or similar diagnoses" and that "[t]his mental disorder caused [Jones] to be weaker and more vulnerable than the general population and in need of special assistance." J.A. 26 (Complaint) ¶ 9. Plaintiff then alleged that while "on parole/probation for a DUI charge, [Jones] visited his parole officer Browne where he was seen and handled by Browne and

---

[2] The District Court had jurisdiction under 28 U.S.C. §§ 1331, 1343, and 1367. We have jurisdiction under 28 U.S.C. § 1291.

[3] We review de novo a district court's order granting a motion to dismiss under Federal Rule of Procedure 12(b)(6). In re Adams Golf, Inc. Sec. Litig., 381 F.3d 267, 273 (3d Cir. 2004). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotation marks omitted). We disregard "a pleading's legal conclusions" but "assume all remaining factual allegations to be true" and construe them in the light most favorable to the plaintiff. Connelly v. Lane Constr. Corp., 809 F.3d 780, 790 (3d Cir. 2016).

Palmer," and that Plaintiff "told Browne that [Plaintiff] was on her way to Browne's office to pick up [Jones]," but that "by the time she got there, [Jones] had already been taken away" to jail. J.A. 26 (Complaint) ¶ 12.

A

The District Court dismissed Plaintiff's § 1983 deliberate indifference to serious medical need claim, construing it as a "vulnerability to suicide claim" and concluding that the allegations against Browne and Palmer were "insufficient to plausibly show that Browne and Palmer acted with reckless indifference to Jones's vulnerability to suicide." McDonald I, 2017 WL 3675408, at *6. We agree that the § 1983 claim warranted dismissal, but affirm the dismissal on slightly different grounds. Before us, and in her complaint, Plaintiff asserts a deliberate indifference to serious medical need claim that is broader than a vulnerability to suicide claim.

"[D]eliberate indifference to serious medical needs of prisoners . . . [is conduct] proscribed by the Eighth Amendment," and therefore, "deliberate indifference to a prisoner's serious illness or injury states a cause of action under [42 U.S.C.] § 1983." Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). To succeed on this claim, a plaintiff must demonstrate "(1) that the defendants were deliberately indifferent to [his] medical needs and (2) that those needs were serious." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) (citing Estelle, 429 U.S. at 106). The deliberate indifference element requires that the defendant "recklessly disregard a substantial risk of serious harm," and therefore

5

negligence or medical malpractice is not enough.  Palakovic v. Wetzel, 854 F.3d 209, 227 (3d Cir. 2017) (citations omitted).  Generally, deliberate indifference is met when the defendant "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." Rouse, 182 F.3d at 197.

Here, the complaint does not plausibly allege that Browne and Palmer intentionally refused to provide Jones medical care or otherwise recklessly disregarded a substantial risk of serious harm.  Rather, the complaint reveals that Jones received medical care precisely because of Browne and Palmer's decision to detain him.  The adequacy of that medical care, however, is not alleged to be within their control.  See Giddings v. Joseph Coleman Ctr., 473 F. Supp. 2d 617, 626 (E.D. Pa. 2007) (holding that a parole officer's decision to "take[] [an inmate] to a nearby prison where he would receive, and actually did receive, immediate medical attention" for a self-inflicted cut observed the day prior "fall[s] far short of the level of delay and denial of necessary treatment required to rise to the level of an Eighth Amendment violation"), aff'd, 278 F. App'x 131 (3d Cir. 2008) (non-precedential).  Thus, the complaint does not plausibly allege that Browne and Palmer intentionally refused to provide Jones medical care, delayed providing him medical treatment, or prevented him from receiving medical care. Therefore, the District Court appropriately dismissed Plaintiff's deliberate indifference

6

claim.[4]

B

The District Court also correctly dismissed Plaintiff's ADA claim against PAPPD because Eleventh Amendment immunity bars the claim.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The "immunity extends to entities that are considered arms of the state." Bowers v. Nat'l Collegiate Athletic Ass'n, 475 F.3d 524, 545 (3d Cir. 2007). However, Congress can abrogate the immunity when acting within its constitutional authority. Id. at 550. In Title II of the ADA, Congress acted within its constitutional authority in abrogating the immunity when a Title II claim concerns "conduct that actually violates the Fourteenth Amendment." United States v. Georgia, 546 U.S. 151, 159 (2006) (emphasis omitted).

Here, PAPPD's Eleventh Amendment immunity bars Plaintiff's ADA Title II

---

[4] Plaintiff included no additional factual allegations in the amended complaint to overcome this dismissal, and her attempts to include additional factual allegations in the second amended complaint exceeded the limited amendments the District Court permitted. See Krantz v. Prudential Invs. Fund Mgmt. LLC, 305 F.3d 140, 144 (3d Cir. 2002) ("A District Court has discretion to deny a plaintiff leave to amend where the plaintiff was put on notice as to the deficiencies in his complaint, but chose not to resolve them."). Therefore, the First Order's dismissal is not impacted by the subsequent pleadings.

7

claim. PAPPD is an arm of Pennsylvania. The complaint alleges that employees of PAPPD "unlawfully" searched, arrested, and incarcerated Jones based upon his mental disability and race, J.A. 26-27, 29 (Compl. ¶¶ 13, 14, 24, 30), but these conclusory assertions, without more, are insufficient to plausibly allege that PAPPD violated Jones' Fourteenth Amendment rights. Therefore, the District Court appropriately dismissed Plaintiff's ADA claim against PAPPD.[5]

### III

Plaintiff also appeals the Second Order's dismissal of Plaintiff's claim under § 504 of the Rehabilitation Act, 29 U.S.C. § 794, against PAPPD. Focusing on the allegations in the amended complaint, her § 504 claim against PAPPD is based on the actions of its employees, Browne and Palmer.

Section 504 of the Rehabilitation Act provides, in relevant part, that "[n]o . . . individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). To successfully assert a § 504 claim, a plaintiff must prove, among other things, that the "disabled" person was "precluded from participating in a program or receiving a

---

[5] To the extent Plaintiff challenges the District Court's dismissal of her § 1983 equal protection claim against PAPPD, the First Order likewise appropriately dismissed the claim as barred by PAPPD's Eleventh Amendment immunity. See Kentucky v. Graham, 473 U.S. 159, 169 n.17 (1985) (explaining that "§ 1983 was not intended to abrogate a State's Eleventh Amendment immunity").

service or benefit because of [his] disability." CG v. Pa. Dep't of Educ., 734 F.3d 229, 235 (3d Cir. 2013) (citing Chambers ex rel. Chambers v. Sch. Dist. of Philadelphia Bd. of Educ., 587 F.3d 176, 189 (3d Cir. 2009)).  This element "requires disability to be the sole cause of discrimination," which means "an alternative cause is fatal to a[] [Rehabilitation Act] claim because disability would no longer be the sole cause." Id. at 236 n.11.

The amended complaint alleges alternative causes for Browne and Palmer's decision to detain of Jones: (1) because of Jones' psychiatric disability, and (2) for Jones' own safety because he was unstable and his car was unfit to drive.  This alternative cause, which is unrelated to Jones' disability, is fatal to Plaintiff's Rehabilitation Act claim, and therefore the District Court properly dismissed this claim.

## IV[6]

Plaintiff also appeals the Third Order, which granted summary judgment on her (1) state-created danger claim against Browne and Palmer; (2) equal protection claim against Palmer and Browne; (3) Monell claim against the City; and (4) state tort claims against Browne and Palmer.  Discovery produced the factual record upon which the

---

[6] Our review of the Third Order granting summary judgment is plenary, Mylan Inc. v. SmithKline Beecham Corp., 723 F.3d 413, 418 (3d Cir. 2013), and we view the facts and make all reasonable inferences in favor of the nonmovant Plaintiff, Hugh v. Butler Cty. Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005).  Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  On summary judgment, the moving party is entitled to judgment as a matter of law when the nonmoving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

summary judgment motions were based, and we next recite the material facts.

Jones had a history of drug use and mental illness, including schizophrenia and depression. One day while on probation[7] and living with Plaintiff, Jones had a manic episode and exhibited signs of paranoia. Concerned for Jones' safety, his family members attempted to disable his vehicle to prevent him from leaving the house. They were unsuccessful, and Jones drove away.

Plaintiff, afraid for her son's safety, called Jones' probation officer, Browne, asking that she invite Jones to her office where Plaintiff would meet Jones and involuntarily commit him. Jones arrived at Browne's office in a "manic" state, with smoke emanating from the hood of his car. J.A. 382. Browne notified Plaintiff that Jones had arrived, but after over two hours of Jones becoming increasingly agitated, Palmer obtained an arrest warrant based on Jones' probation violation for having an open bill related to a DUI offense committed while on probation. By the time Plaintiff arrived at the office, Jones had already been taken to jail.

At the jail, Jones met with several social workers and healthcare professionals who prescribed, among other things, blood pressure medication, which Jones was allowed to keep on his person ("KOP"). During his initial and follow-up evaluations, Jones denied both having suicidal thoughts and engaging in prior suicide attempts. Four days after

---

[7] Jones was on parole for an aggravated assault conviction when he committed a DUI, but the parties usually refer to him as having been on probation.

entering the jail, Jones overdosed on the blood pressure medication and died.

A

We will first examine Plaintiff's Fourteenth amendment state-created danger claim. To prevail, a plaintiff must prove: (1) "the harm ultimately caused was foreseeable and fairly direct," (2) "the state actor acted in willful disregard for the safety of the [victim]," (3) "there existed some relationship between the state and the [victim]," and (4) "the state actors used their authority to create an opportunity that otherwise would not have existed for the [harm] to occur." Est. of Smith v. Marasco, 430 F.3d 140, 153 (3d Cir. 2005) (citations omitted). The second element is satisfied only when the state actor's conduct "shocks the conscience." Id. The "exact degree of wrongfulness necessary to reach the 'conscience-shocking' level depends upon the circumstances of a particular case," and when the state actor is in a "hyperpressurized environment" (as opposed to a situation where the state actor has "the luxury of proceeding in a deliberate fashion") conscience-shocking behavior usually requires a showing that the state official "deliberately harmed the victim." Id. (citation omitted).

Here, Browne and Palmer were in a hyperpressurized environment. One officer observed Jones arrive at PAPPD's office driving "very erratically, driving from one side to the other trying to park the vehicle almost hitting people out of control," J.A. 439, with his car smoking from the hood. Browne explained that when Jones arrived at her office, he was in a "manic" state, his "demeanor was just kind of all over the place, [he] was

11

very loud," "he was bouncing from question to question," and "[a]t one point, he bust out in song and sung [Browne] a full song very loudly." J.A. 382. Browne's supervisor, Palmer, also met with Jones and explained that Jones was "extremely agitated," "rambling," "pushing the table," and that he "banged the wall" with his hands. J.A. 429-30. Palmer recounted that Jones was frustrated because he "wanted to go to New York to save his brother from ISIS." J.A. 430. After over two hours of Jones becoming increasingly agitated and expressing an intent to leave the state in an unfit automobile, Browne and Palmer detained Jones for a violation of probation and took him "into custody . . . for his own safety." J.A. 237. Given Jones' behavior and Browne and Palmer's concerns for his safety, no reasonable jury could have found that Browne and Palmer's decision to detain Jones, particularly given that they obtained a warrant for his arrest based upon an independent violation of probation, was conscience-shocking behavior. Therefore, the District Court properly granted summary judgment in favor of Browne and Palmer on Plaintiff's state-created danger claim.

B

The District Court also correctly granted summary judgment in favor of Browne and Palmer on Plaintiff's equal protection "class of one" claim.

To prevail on a Fourteenth Amendment equal protection clause claim under a "class of one" theory, a plaintiff must prove "(1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no

12

rational basis for the difference in treatment." Hill v. Borough of Kutztown, 455 F.3d 225, 239 (3d Cir. 2006) (citing Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)).

Here, Plaintiff has not satisfied the first and third elements. Plaintiff failed to identify similarly situated individuals who Browne and Palmer treated differently. See id. at 239. Additionally, given Jones' behavior at the probation office coupled with the fact that Browne and Palmer learned that Jones "was in technical violation [of his probation]," J.A. 431, and that he intended to leave the state, which itself would violate the terms of his probation, no reasonable juror could find that Browne and Palmer had no rational basis for detaining Jones. Therefore, the District Court properly granted summary judgment in favor of Browne and Palmer on this claim.

C

The District Court also correctly granted summary judgment in favor of the City on Plaintiff's § 1983 Monell claim.

Under Monell, a plaintiff "must demonstrate that the violation of his rights was caused by either a policy or a custom of the municipality." Berg v. Cnty. of Allegheny, 219 F.3d 261, 275 (3d Cir. 2000) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978)). Thus, the plaintiff must "identif[y] a municipal policy or custom [that he claims violates his rights and then . . .] he must demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." Id. at 276

13

(quotation marks and citation omitted). If "the policy or custom does not facially violate federal law, causation can be established only by demonstrat[ing] that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." Id. (quotation marks and citation omitted). In other words, "[a] showing of simple or even heightened negligence will not suffice." Id.

There are two policies that may be implicated here, but neither provides a basis for relief. First, the City maintained a policy on inmate suicide prevention (the "Policy"). The Policy instructs "[a]ll correctional staff [to] remain alert for indications that inmates are possible self-injury risks" and requires them to conduct "a formal, self-injury risk assessment process, and standardized observation and intervention procedures" to ensure proper monitoring. J.A. 443.[8] Here, staff members conducted two self-harm evaluations of Jones during his four-day imprisonment, and, during both evaluations, Jones denied having suicidal thoughts or engaging in prior suicide attempts. Given these denials, which contributed to a staff member's assessment that Jones' "[s]uicide risk appear[ed] low at this time," J.A. 258, no reasonable juror could find that the City was the "moving force" behind Jones' suicide, Berg, 219 F.3d at 276, or that the City was deliberately indifferent to a known or obvious risk of Jones committing suicide.

The second policy involves allowing inmates to keep certain medications in their

---

[8] Plaintiff does not argue that the Policy is facially invalid, but instead asserts that staff acting under the Policy improperly failed to prevent Jones' suicide.

14

possession, rather than requiring them to obtain the medication from the dispensary. Dr. Vivian Gandy, a healthcare provider at the jail, explained that "[n]ormally for specific medication, narcotics, seizure meds, those meds would not be given KOP, but for hypertensive meds, that could be KOP unless there was some specific reason for that individual not to have it on [his] person" and "[t]here was no reason" for her to order 'no KOP' here because she did not know of Jones' prior suicide attempts and Jones did not say that he was having suicidal thoughts. D.C. Dkt. No. 93-14. Even if in hindsight the healthcare professionals acting under these policies improperly assessed Jones' suicide risk before permitting him to keep his blood pressure medication on his person, this does not establish that there was a policy of indifference that would subject the City to Monell liability. See Palakovic, 854 F.3d at 228 (explaining that where there is a "dispute . . . over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law," and will "[d]efer[]" to prison medical authorities' "diagnosis and treatment of patients" (quotation marks omitted)). Therefore, the District Court properly granted summary judgment in favor of the City on Plaintiff's Monell claim.

D

Finally, the District Court correctly granted summary judgment in favor of Browne and Palmer on Plaintiff's state law tort claims because they were protected by

15

sovereign immunity when their actions led to Jones' arrest and incarceration.

Pennsylvania "officials and employees acting within the scope of their duties[] shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except [when Pennsylvania] specifically waive[s] the immunity." 1 Pa. Cons. Stat. Ann. § 2310. Pennsylvania looks to the Restatement (Second) of Agency to determine whether conduct is within the scope of one's employment. See Butler v. Flo-Ron Vending Co., 557 A.2d 730, 736 (Pa. Super. Ct. 1989). An employee acts within the scope of her employment when the employee's conduct (1) "is the kind [the employee] is employed to perform," (2) "occurs substantially within the authorized time and space limits," and (3) "is actuated, at least in part, by a purpose to serve the [employer]." Brumfield v. Sanders, 232 F.3d 376, 380 (3d Cir. 2000) (quoting Restatement (Second) of Agency § 228, analyzing Pennsylvania sovereign immunity). Actions that are not expressly authorized by the employer may still be within the scope of employment "if they are clearly incidental to the [employer]'s business." Shuman Estate v. Weber, 419 A.2d 169, 173 (Pa. Super. Ct. 1980).

Plaintiff does not dispute that Browne and Palmer obtained a warrant for Jones' arrest for a technical violation of probation or that they did so during their workday and while they were at the PAPPD office. Plaintiff nevertheless argues that Browne and Palmer were not acting within the scope of their employment because they "lied to the judge directly" in securing the warrant. Appellant Br. at 23. Plaintiff, however, concedes

16

that "attempting to leave the state . . . is a technical [] violation" of Jones' supervision, Appellant Br. at 23, and the record shows that Jones "wanted to go to New York to save his brother from ISIS," J.A. 430. Plaintiff also does not dispute that Jones had been arrested for a DUI offense, which was a violation of his probation. Given Jones' stated intention to leave Pennsylvania, which itself would violate his probation, and the fact his recent DUI arrest violated his probation, nothing in the record suggests that Browne and Palmer sought the warrant for a reason unconnected to their employment. Because no reasonable juror could find that Browne and Palmer acted outside the scope of their employment, the District Court properly held that they were entitled to sovereign immunity on Plaintiff's state law claims.[9]

V

For the foregoing reasons, we will affirm.

---

[9] We will not consider Plaintiff's Fourth Amendment argument against Browne and Palmer because Plaintiff did not plead a Fourth Amendment unlawful seizure claim against them in either her initial or first amended complaint. Furthermore, her allegations concerning this claim in the second amended complaint were struck as beyond the scope of the permitted amendment and Plaintiff did not appeal the order striking those allegations. See Hamer v. LivaNova Deutschland GmbH, 994 F.3d 173, 179 n.23 (3d Cir. 2021) ("Because those claims were not raised in his complaint, we cannot consider them now as a basis for appeal.").