

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-31-2008

# Haybarger v. Lawrence Cty Adult

Precedential or Non-Precedential: Precedential

Docket No. 07-3720

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Haybarger v. Lawrence Cty Adult" (2008). *2008 Decisions*. Paper 1.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 07-3720
No. 07-3733

———

DEBRA HAYBARGER,

Appellee

v.

LAWRENCE COUNTY ADULT PROBATION AND
PAROLE;
COUNTY OF LAWRENCE; WILLIAM MANCINO, in his
individual and
official capacities,

Lawrence County Adult Probation and Parole,

Appellant

———

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 06-cv-00862)

District Judge:  Honorable Gary L.  Lancaster

————

Argued September 29, 2008
Before: FISHER, CHAGARES and HARDIMAN, *Circuit Judges*.

(Filed: December 31, 2008)

Gregory G.  Paul (Argued)
Robert Peirce & Associates
707 Grant Street
2500 Gulf Tower
Pittsburgh, PA 15219
    *Attorney for Appellee Debra Haybarger*

A. Taylor Williams (Argued)
Supreme Court of Pennsylvania
Administrative Office of PA Courts
1515 Market Street
Suite 1414
Philadelphia, PA 19102
    *Attorney for Appellant Lawrence County Adult
Probation and Parole*

Edmond R. Joyal, Jr.
Law Office of Joseph S. Weimer
975 Two Chatham Center
Pittsburgh, PA 15219
    *Attorney for Appellee William Mancino*

2

OPINION OF THE COURT

HARDIMAN, *Circuit Judge*.

State governments and their subsidiary units are immune from suit in federal court under the Eleventh Amendment. We have held that Pennsylvania's judicial districts are arms of the state entitled to Eleventh Amendment immunity. *Benn v. First Judicial Dist. of Pa.*, 426 F.3d 233, 240 (3d Cir. 2005). This immunity is not absolute, however. Under the Rehabilitation Act, States waive their immunity when they accept federal funds. In this interlocutory appeal, we must identify the proper entity to determine whether a judicial district has waived its Eleventh Amendment immunity.

I.

Alleging violations of both federal and state antidiscrimination laws, Debra Haybarger filed suit in the United States District Court for the Western District of Pennsylvania against Lawrence County, the Lawrence County Adult Probation and Parole Department (LCAPPD), and Chief Probation Officer William Mancino. Haybarger served for sixteen years as an office manager for the LCAPPD, which is a department of the Fifty-Third Judicial District of Pennsylvania encompassing all of Lawrence County. A diabetic, Haybarger endured a lengthy hospital stay that caused her to miss work for

3

almost the entire month of July 2004. Upon her return to work, she was told that her health problems were causing her to "slack" in her performance. On October 4, 2004, Haybarger received a formal letter of discharge.

Following her discharge, Haybarger filed a complaint seeking equitable relief as well as compensatory and punitive damages against Lawrence County, the LCAPPD, and Mancino, in both his official and individual capacities. Haybarger asserted violations of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et. seq.*, the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601, *et. seq.*, Section 504 of the Rehabilitation Act (RA), 29 U.S.C. § 794, *et. seq.*, and the Pennsylvania Human Relations Act (PHRA), 43 PA. CONS. STAT. § 951, *et. seq.*

Defendants filed motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The District Court dismissed all claims against Lawrence County and Mancino individually, finding that the LCAPPD, rather than Lawrence County, was Haybarger's true employer. The remaining Defendants claimed immunity under the Eleventh Amendment and the District Court agreed in part, dismissing Haybarger's ADA and FMLA claims because Congress did not validly abrogate the States' Eleventh Amendment immunity under the relevant provisions of those laws. *See Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356 (2001); *Chittister v. Dep't of Cmty. & Econ. Dev.*, 226 F.3d 223 (3d Cir. 2000). Additionally, the District Court dismissed Haybarger's PHRA claims because Pennsylvania has retained its immunity against those claims when they are brought in federal court. *See* 42 PA.

4

CONS. STAT. § 8521(b). As for Haybarger's Rehabilitation Act claim, the District Court ordered limited discovery to discern whether Pennsylvania's Unified Judicial System (UJS) or the Fifty-Third Judicial District received federal funds during the relevant time period, which would result in a waiver of Eleventh Amendment immunity under the RA.[1]

Discovery revealed that although the LCAPPD received no federal funds, the Domestic Relations Section (DRS) of the Fifty-Third Judicial District was receiving federal funds under Title IV-D of the Social Security Act, 42 U.S.C. § 651. These federal monies — which were earmarked specifically for child support enforcement — flowed from the federal government to

---

[1]Defendants alleged in their motion to dismiss that the court should look at the *judicial district* to decide whether Eleventh Amendment immunity was waived. *See Haybarger v. Lawrence County Adult Prob. & Parole*, No. 06-862, 2007 WL 789657, at \*3 (W.D. Pa. Mar. 14, 2007). In support of this argument, Defendants submitted an inaccurate affidavit from the Court Administrator for the Fifty-Third Judicial District, stating that neither the judicial district nor the LCAPPD had received "funds from any federal source" at any relevant time. *Id.* After it became clear that sections of the Fifty-Third Judicial District received federal funding, however, Defendants abandoned this argument. Conversely, Haybarger had argued initially that the relevant inquiry was whether *the UJS* received any federal funds. Since learning the true facts, Haybarger now contends that the Fifty-Third Judicial District is the relevant unit. *Id.* at \*4.

Pennsylvania's Department of Public Welfare (DPW), which reports to the Governor of Pennsylvania. DPW then contracted with the domestic relations sections of various counties. In the case of Lawrence County, the parties to the agreement to provide Title IV-D funds were DPW and the "Domestic Relations Section (DRS) of the Court of Common Pleas and County Commissioners of Lawrence County." The agreement was signed by the County Commissioners of Lawrence County and the President Judge of the Court of Common Pleas of Lawrence County.

Following discovery, the LCAPPD and Mancino moved for summary judgment, claiming Eleventh Amendment immunity. The District Court denied the motion, holding that the Fifty-Third Judicial District had waived its Eleventh Amendment immunity, even if only one section of the judicial district accepted federal funds. The LCAPPD and Mancino brought this interlocutory appeal and we have jurisdiction under the collateral order doctrine. 28 U.S.C. § 1291; *see also P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139 (1993).

II.

We review the denial of a motion for summary judgment *de novo*. *Ye v. United States*, 484 F.3d 634, 636 (3d Cir. 2007). We "apply the same test required of the district court" and view inferences to be drawn from the underlying facts in the light most favorable to the nonmoving party. *Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995). Our review of Defendants' entitlement to Eleventh Amendment immunity is

6

plenary. *Skehan v. State Sys. of Higher Educ.*, 815 F.2d 244, 246 (3d Cir. 1987).[2]

III.

The Eleventh Amendment states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. The Eleventh Amendment renders unconsenting States immune from suits brought in federal courts by private parties. *See Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974); *see also Lombardo v. Pa. Dep't of Pub. Welfare*, 540 F.3d 190, 194-95 (3d Cir. 2008).

The Supreme Court long ago extended the Eleventh Amendment's coverage to suits brought against a State by its

---

[2]Opinions of this court and other courts of appeals have sometimes used the terms "sovereign immunity" and "Eleventh Amendment immunity" interchangeably. *See, e.g.*, *Koslow v. Pennsylvania*, 302 F.3d 161 (3d Cir. 2002). As we stated in *Lombardo v. Pennsylvania Department of Public Welfare*, 540 F.3d 190 (3d Cir. 2008), the Supreme Court has explained the difference between the two concepts. *Id.* at 195 (citing *Alden v. Maine*, 527 U.S. 706, 713 (1999)). Because 42 U.S.C. § 2000d-7 refers to States' immunity from Rehabilitation Act claims under the Eleventh Amendment, we analyze the LCAPPD's defense to Haybarger's claim pursuant to Eleventh Amendment immunity.

7

own citizens. *Hans v. Louisiana*, 134 U.S. 1 (1890). More recently, the Court held that the Eleventh Amendment applies to suits against subunits of the State. *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984). In addition, a suit may be barred by the Eleventh Amendment even though a State is not named a party to the action, so long as the State is deemed to be the real party in interest. *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997). We consider several factors in determining whether a suit against an entity is actually a suit against the State itself, including: (1) the source of the money that would pay for the judgment; (2) the status of the entity under state law; and (3) the entity's degree of autonomy. *Fitchik v. N.J. Transit Rail Operations, Inc.*, 873 F.2d 655, 659 (3d Cir. 1989).

We have held that Pennsylvania's judicial districts, including their probation and parole departments, are entitled to Eleventh Amendment immunity. *Benn*, 426 F.3d at 241. The Commonwealth vests judicial power in a unified judicial system, PA. CONST. art. V, § 1, and all courts and agencies of the UJS are part of the Commonwealth government rather than local entities. *Benn*, 426 F.3d at 240. As an arm of the State, an individual judicial district and its probation and parole department are entitled to Eleventh Amendment immunity.

Eleventh Amendment immunity is not absolute, however. *In re Sacred Heart Hosp. of Norristown*, 133 F.3d 237, 242 (3d Cir. 1998). States and their subunits can waive immunity by taking voluntary action inconsistent therewith. *See, e.g., Gardner v. New Jersey*, 329 U.S. 565, 574 (1947). For instance, a State may waive its Eleventh Amendment immunity by

8

consenting to suit. *See Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675 (1999). Alternatively, Congress may require a waiver of immunity as a condition for receipt of federal funds, even though Congress could not order such a waiver directly. *See A.W. v. Jersey City Pub. Schs.*, 341 F.3d 234, 242-44 (3d Cir. 2003). When a State participates in a federal financial assistance program "in light of the existing state of the law," it is on notice that its acceptance of federal funds may waive its Eleventh Amendment immunity. *Edelman*, 415 U.S. at 687.

## A.

The federal law at issue in this case is the Rehabilitation Act. Section 504 of the RA states: "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any

program or activity receiving Federal financial assistance."[3]  29 U.S.C. § 794(a).

The RA has a history of scrutiny under the Eleventh Amendment.  *See Nihiser v. Ohio EPA*, 269 F.3d 626, 628 (6th Cir. 2001).  In 1985, the Supreme Court held that Section 504 did not make sufficiently clear whether Congress intended the States to waive their Eleventh Amendment immunity against RA lawsuits as a condition of accepting federal funds.  *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 246 (1985).  In response, Congress enacted 42 U.S.C. § 2000d-7, which provides: "A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973."  By superseding *Atascadero*, Congress put States on notice that they waive their Eleventh Amendment immunity to RA claims when they accept federal funds.  *See Koslow v. Pennsylvania*, 302 F.3d 161, 170 (3d Cir. 2002).  Accordingly, we have

---

[3]To prevail on a claim under Section 504, a plaintiff must demonstrate that: (1) she is a "handicapped individual" under the Act; (2) she is "otherwise qualified" for the position sought; (3) she was excluded from the position sought solely by reason of her handicap; and (4) *the program or activity in question receives federal financial assistance.  Strathie v. Dep't of Transp.*, 716 F.2d 227, 230 (3d Cir. 1983) (emphasis added).  Thus, the question of whether the entity received federal funds is important not only as part of an Eleventh Amendment immunity inquiry, but also in order to make out a *prima facie* case under the RA.

recognized § 2000d-7 as a valid and unambiguous waiver of Eleventh Amendment immunity for the program or agency that receives federal funds. *Id.* Our sister circuit courts of appeals have likewise found § 2000d-7 to be a valid waiver. *See Nihiser*, 269 F.3d at 628; *Jim C. v. United States*, 235 F.3d 1079, 1081 (8th Cir. 2000); *Pederson v. La. State Univ.,* 213 F.3d 858, 875-76 (5th Cir. 2000); *Stanley v. Litscher,* 213 F.3d 340, 344 (7th Cir. 2000); *Sandoval v. Hagan,* 197 F.3d 484, 493-94 (11th Cir. 1999), *rev'd on other grounds*, 532 U.S. 275 (2001); *Litman v. George Mason Univ.,* 186 F.3d 544, 554 (4th Cir. 1999); *Clark v. California,* 123 F.3d 1267, 1271 (9th Cir. 1997).

B.

Although courts have uniformly determined that acceptance of federal funds waives Eleventh Amendment immunity under the RA, they have struggled to determine how broadly or narrowly to define the "program or activity" that is accepting the federal funds. This definitional step is outcome determinative because the scope of Eleventh Amendment immunity is coextensive with the State department or agency receiving federal funds.

In undertaking this critical first step, we begin with the text of the Act:

**"Program or activity" defined**

For the purposes of this section, the term "program or activity" means all the operations of —

11

**(1)(A)** a department, agency, special purpose district, or other instrumentality of a State or of a local government; or

**(B)** the entity of such State or local government that distributes such assistance and each such department or agency (and each other State or local government entity) to which the assistance is extended, in the case of assistance to a State or local government;

. . . any part of which is extended Federal financial assistance.

29 U.S.C. § 794(b).

The Supreme Court initially interpreted "program or activity" narrowly, holding in *Grove City College v. Bell*, 465 U.S. 555 (1984), that Title IX's prohibition of sex discrimination in "any education program or activity" receiving federal assistance reached only the specific parts of a recipient's operation which directly benefited from federal assistance. *See id.* at 575. That same day, the Court extended *Grove City* to apply to the RA. *See Consol. Rail Corp. v. Darrone*, 465 U.S. 624, 635-36 (1984). By interpreting "program or activity" in a limited fashion, the Supreme Court narrowed RA coverage and greatly reduced the likelihood of any potential immunity waiver.

In response to *Grove City* and its progeny, Congress passed the Civil Rights Restoration Act of 1987. Therein, Congress found that "certain aspects of recent decisions . . . of

12

the Supreme Court have unduly narrowed or cast doubt upon the broad application of" civil rights statutes. Civil Rights Restoration Act of 1987, Pub. L. No. 100-259, § 2, 102 Stat. 28 (1988). Accordingly, legislative action was "necessary to restore the prior consistent and long-standing executive branch interpretation and broad, institution-wide application of those laws as previously administered." *Id.*

Since the passage of the Civil Rights Restoration Act, this Court has interpreted "program or activity" broadly. *See, e.g.*, *Inmates of Allegheny County Jail v. Wecht*, 93 F.3d 1124, 1131 (3d Cir. 1996); *Williams v. Sch. Dist. of Bethlehem*, 998 F.2d 168, 171 n.3 (3d Cir. 1993). By accepting federal funds, the State voluntarily waives Eleventh Amendment immunity for RA claims against that program, department or agency – but only that specific department or agency. *Koslow*, 302 F.3d at 170. Once the department or agency is identified, however, the statute encompasses all of its operations, regardless of whether a particular operation is federally assisted. *Id.* at 168. Thus, although a particular function or operation might be the State's only link to federal funds, the waiver under § 2000d-7 is structural; it applies to "all the operations" of the entity receiving federal funds. *Id.* at 171-72.

Our decision in *Koslow* is instructive here. There, an employee of the Pennsylvania State Correctional Institute at Graterford sued under the ADA, the RA, and the PHRA alleging that he was fired after suffering job-related injuries. At the time, the Graterford facility was receiving federal funds under the State Criminal Alien Assistance Program (SCAAP), which assisted states housing illegal aliens in state correctional

13

facilities. Pennsylvania received federal funds under SCAAP and disbursed them to the Department of Corrections (DOC), which then distributed funds to the individual facilities. The DOC did not track the use of SCAAP funds to ensure that they were used for their intended purpose. *Koslow*, 302 F.3d at 167.

The question presented was whether Pennsylvania had waived its Eleventh Amendment immunity by accepting SCAAP funds despite the fact that Koslow's employment had nothing to do with SCAAP. We held that the Commonwealth (doing business as the DOC) — rather than the specific prison where Koslow worked — was a proper defendant. Because the Commonwealth accepted federal funds, the DOC waived immunity for *all* of its operations regardless of whether they were federally assisted. *Id.* at 168, 171-72, 176.

IV.

With the foregoing legal principles in mind, we turn to the dispositive question in this case: whether the Domestic Relations Section is an independent agency with legal status of its own or a mere part of the Fifty-Third Judicial District. If the DRS is an independent entity, it is a "program or activity" and its receipt of federal funds does not waive the LCAPPD's Eleventh Amendment immunity. If, however, the DRS is a subunit of the Fifty-Third Judicial District, then its receipt of federal funds will effectuate a waiver of Eleventh Amendment immunity for the entire judicial district and all of its subunits, including the LCAPPD. In that case, the LCAPPD would be amenable to Haybarger's suit.

14

A.

Although the Rehabilitation Act is a federal statute, we look to state law to ascertain the character of a state entity for purposes of assessing Eleventh Amendment immunity. As the Supreme Court has stated, the question whether a particular state agency is an "arm of the state" entitled to Eleventh Amendment immunity is a "question of *federal law*," but "that federal question can be answered only after considering the provisions of *state law* that define the agency's character." *Regents of the Univ. of Cal.*, 519 U.S. at 429 n.5 (emphasis added). Though not dispositive, a State's characterization of an entity under state law is significant. *See Cooper v. Se. Pa. Transp. Auth.*, -- F.3d -- (3d Cir. 2008). Accordingly, we must assess Pennsylvania law to determine whether the DRS is an independent entity capable of meeting the definition of "program or activity" under 29 U.S.C. § 794(b).

As we noted previously, the Pennsylvania Constitution vests judicial power in a "unified judicial system" which includes all of Pennsylvania's courts. PA. CONST. art. V, § 1. As such, the Pennsylvania courts are part of the "Commonwealth government," which makes them state agencies. *See* PA. CONST. art. V, § 6(c); 42 PA. CONS. STAT. § 102 (2008); 42 PA. CONS. STAT. § 301 (2008). Pennsylvania's judicial districts, including their probation and parole departments, are ordinarily entitled to Eleventh Amendment immunity as arms of the State. *Benn*, 426 F.3d at 241.

The UJS is divided into sixty judicial districts. 42 PA. CONS. STAT. § 901 (2008). In most cases, each district

15

comprises one county[4] and has one court of common pleas. 42 PA. CONS. STAT. § 911 (2008). Under Pennsylvania law, each court of common pleas must have a domestic relations section, "which shall consist of such probation officers and other staff of the court as shall be assigned thereto." 42 PA. CONS. STAT. § 961 (2008). There is no similar provision explicitly calling for adult probation and parole departments. Instead, Title 42 provides that each court of common pleas "shall have such other sections as may be provided or prescribed by law." 42 PA. CONS. STAT. § 962 (2008).

This Court has stated that a county domestic relations section is merely a *part* of the court of common pleas for that county, and "thus *not* a county agency." *Rogers v. Bucks County Domestic Relations Section*, 959 F.2d 1268, 1271 n.4 (3d Cir. 1992) (emphasis added). Under this interpretation, the Domestic Relations Section could not be the "defining unit" for Eleventh Amendment immunity purposes, because the Fifty-Third Judicial District would be the relevant entity.

Additionally, we note that the DRS does not hold itself out as independent from the Fifty-Third Judicial District and the Lawrence County Court of Common Pleas. The contract to receive Title IV-D funds — which counsel for the LCAPPD asserted at oral argument should constitute a "specific waiver" by the DRS alone — was entered into by and between the

---

[4]In limited cases, two counties are combined into one judicial district. The Fifty-Third Judicial District covers Lawrence County alone.

16

Pennsylvania DPW and the "Domestic Relations Section (DRS) of the Court of Common Pleas and County Commissioners of Lawrence County." Additionally, the Child and Spousal Support Handbook published by the DRS states that "Domestic Relations is part of the Family Court," and, "the Family Court is a division of the Lawrence County Court of Common Pleas." DOMESTIC RELATIONS SECTION, CHILD AND SPOUSAL SUPPORT H A N D B O O K 2 , http://www.co.lawrence.pa.us/domestic/Child%20and%20Spo usal%20Support %20Handbook.pdf.[5]

---

[5]A sampling of official websites of Pennsylvania counties reveals that their respective domestic relations sections are constituent parts of their courts of common pleas:

> Berks County. "The Domestic Relations Section is part of the Family Court, which is a division of the Berks County Court of Common Pleas." http://www.co.berks.pa.us/dr/lib/dr/introduction .pdf.

> Delaware County. "Domestic Relations Section is part of the Family Court. The Family Court is a division of the Delaware County 32nd Judicial District Court of Common Pleas." http://www.co.delaware.pa.us/domesticrelations /introtoDR.html.

> Lehigh County. "The Lehigh County Domestic Relations Section (D.R.S.) is part of the Family

B.

In light of the aforementioned facts, we cannot say that the DRS is an independent legal entity. Rather, the DRS is a subunit of the Fifty-Third Judicial District, which is in turn part of the UJS. Consequently, we hold that the receipt of federal funds by the DRS effectuated a waiver of Eleventh Amendment immunity under the RA for not just the DRS, but for all subunits of the Fifty-Third Judicial District, including the LCAPPD.

The LCAPPD argues that the relevant entity should be the DRS and, under *Koslow*, the judicial district should be entitled to waive immunity on a "piecemeal basis, by simply accepting federal funds for some departments and declining them for others." *See Koslow*, 302 F.3d at 171. Thus, the LCAPPD asserts that the "specific contract" between DPW and the DRS should be construed as a "narrow and express waiver" that should be limited to the department actually receiving federal assistance.

We are unpersuaded by the LCAPPD's arguments because they misconstrue the legal status of the DRS. Because the DRS is not independent, the funds it receives are imputed to the Fifty-Third Judicial District as a whole. The Fifty-Third Judicial District is the relevant "program or activity" under §

Court, a division of the Lehigh County Court of C o m m o n    P l e a s . " http://www.lccpa.org/depts/domrel.html.

18

794(b) and the Eleventh Amendment immunity waiver applies to "all of the operations of that department regardless of whether the particular activities are federally assisted." *A.W.*, 341 F.3d at 243. Even if the federal funds received by the DRS on behalf of the judicial district do not relate to the functions of the LCAPPD, the DRS and the LCAPPD are linked for Eleventh Amendment immunity waiver purposes by virtue of their status under Pennsylvania law.

We find this case analogous to *Thomlison v. City of Omaha*, 63 F.3d 786 (8th Cir. 1995). There, a discharged firefighter sued Omaha for discrimination under the Rehabilitation Act. Omaha contended that the defining unit for purposes of the RA should be the Fire Division, which Omaha believed should be exempt from the RA because it did not receive federal assistance. *Id.* at 789.

The Court of Appeals for the Eighth Circuit determined that the City drew "too fine a line." *Id.* Omaha's Public Safety Department included the Fire, Police, and Communications Divisions. *Id.* The Police Division received federal funds, but the Fire Division did not. *Id.* The Fire Division's lack of federal funding did not render it immune from suit, however, because the defining unit was the Public Safety Department as a whole. *Id.* Because the RA defines "program or activity" to include "all of the operations of a department . . . any part of which was extended federal financial assistance," the court

19

concluded that this definition covered the operations of all three divisions of the Public Safety Department. *Id.*[6]

Here, the LCAPPD makes the same error that Omaha made in *Thomlison*. The proper "defining unit" is the Fifty-Third Judicial District and the receipt of federal funds by the DRS effectuates a waiver of Eleventh Amendment immunity for the LCAPPD and all other subunits of the Fifty-Third Judicial District in the same way that the Police Division's receipt of federal funds effectuated a waiver as to the Fire and Communications Divisions in *Thomlison*.

Without mentioning *Thomlison*, the LCAPPD relies on *Schroeder v. City of Chicago*, 927 F.2d 957 (7th Cir. 1991), which, in conclusory fashion, stated: "[The Restoration Act] was not, so far as we are able to determine . . . intended to sweep in the whole state or local government, so that if two little crannies . . . of one city agency . . . discriminate, the entire city government is in jeopardy of losing its federal financial assistance." *Id.* at 962. At first glance, *Schroeder* would seem to support the LCAPPD, but the facts of that case render it inapposite.

In *Schroeder*, a former municipal firefighter sued the City of Chicago under the Rehabilitation Act for a delay in payment of his disability benefits. *Id.* at 962. Certain departments of one

---

[6]We note that by the time of trial in *Thomlison*, Omaha had abolished the Public Safety Department and made each of the three divisions autonomous.

20

city agency received federal funding, but the entire city was not a "program or activity" receiving federal financial assistance. As a result, the Court of Appeals for the Seventh Circuit barred Schroeder's RA claim against Chicago. Unlike *Schroeder*, Haybarger did not sue the entire Commonwealth for her termination. Instead, she identified the entity receiving federal funds — the Fifty-Third Judicial District — and limited her suit accordingly. In sum, because Haybarger fashioned her suit in a materially different manner than the plaintiff in *Schroeder*, we find that decision inapposite.

V.

Waivers of sovereign immunity are disfavored absent clear evidence and we must "indulge every reasonable presumption against waiver." *Aetna Ins. Co. v. Kennedy*, 301 U.S. 389, 393 (1937); *Lombardo*, 540 F.3d at 198. However, our result here is dictated by an analysis of Pennsylvania law regarding the legal status of judicial districts and their respective subparts. Pennsylvania remains free to separate its domestic relations sections and like entities into autonomous departments or agencies. To date, Pennsylvania has not done so. Because the Domestic Relations Section is not an independent entity, its waiver of Eleventh Amendment immunity through its receipt of federal funds must be imputed to the Fifty-Third Judicial District as a whole, including the Lawrence County Adult Probation and Parole Department. Therefore, we will affirm the District Court's order denying Defendants' motions for summary judgment.