**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3530
_____

POLICE OFFICER WILLIE COLEY,
                                          Appellant

v.

COUNTY OF ESSEX; ESSEX COUNTY PROSECUTOR'S OFFICE;
INVESTIGATOR QUOVELLA SPRUILL; JOHN/JANE DOE
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 08-cv-04325)
District Judge:  Honorable William J. Martini
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 12, 2011
Before:  AMBRO, HARDIMAN and STAPLETON, <u>Circuit</u> <u>Judges</u>

(Opinion filed May 26, 2011)

_____

OPINION
_____

PER CURIAM

        Willie Coley appeals pro se from an order of the District Court granting summary

judgment in favor of the Essex County Prosecutor's Office ("ECPO") and one of its

investigators, Quovella Spruill.  For the reasons that follow, we will affirm.

Because we write only for the parties, who are familiar with the facts, we will not recite them except as necessary to the discussion. Coley was accused of sexually abusing his girlfriend's daughter, A.H., who was then 15 years old. A.H. had disclosed the abuse to a friend, who notified a school counselor. The counselor, in turn, notified the New Jersey Department of Human Services, Office of Children's Services ("DYFS") representative, which opened an investigation. The next day, March 1, 2007, two DYFS workers interviewed A.H. at her school. The DYFS then brought A.H. to the Child Advocacy Center, where she met with another DYFS representative, Detective Spruill, and Detective Spruill's supervisor. That evening, Detective Spruill took two statements from A.H., in which she claimed that Coley had sexually abused her since she was eight years-old, provided details concerning when, where, and how the abuse occurred, and explained that Coley had sex with her two weeks earlier. These allegations were consistent with A.H.'s previous accounts of the abuse.

Meanwhile, Detective Spruill received approval from an assistant prosecutor in the ECPO's Child Abuse Unit to set up and record telephone conversations between Coley and A.H., and between Coley and A.H's mother. During those conversations, Coley appeared to be aware of the allegations being made against him but did not offer a clear denial. After reviewing the evidence, the assistant prosecutor determined that probable cause existed to arrest Coley on various charges, including sexual assault, aggravated sexual assault, and endangering the welfare of a child. Detective Spruill signed complaints in support of the arrest warrant that night, and presented them, along with

2

A.H.'s statements and draft transcripts of the telephone conversations, to a municipal judge. The judge authorized Coley's arrest. The next day, March 2, 2007, Coley turned himself in to the Montclair Police Department; he remained incarcerated for 37 days.

On March 15, 2007, A.H. submitted to physical and psychological examinations. The doctor who performed the physical examination concluded that it "neither confirm[ed] nor exclude[d] sexual abuse." Following the psychological examination, in which A.H. again described the abuse, the psychologist concluded that "[A.H.'s] clinical presentation, her reports of the abuse to her friends, the police, the Essex County Prosecutor's Office, the . . . pediatrician who evaluated her medically, and the information shared with the undersigned are consistent with the clinical profile of children who have been sexually victimized." During both examinations, A.H. claimed that she regretted disclosing the abuse because of the effect it had on her family and Coley.

Detective Spruill continued to investigate when, on March 21, 2007, she received a telephone call from A.H., who sought to change her statement. Specifically, A.H. told Detective Spruill that "[s]ome of the things I said happened, didn't exactly happen." According to A.H., while Coley had inappropriately touched her "a lot actually," "it was only one time he actually tried to have sex with [her.]" A.H. explained that since coming forward with the allegations "[e]verything [was] getting worse, nothing [was] getting better, nothing at all." A.H. further stated that she had "divided [her family] apart" and expressed concern that her "mother . . . thinks she's in jeopardy of losing" her children.

After speaking with A.H., Detective Spruill submitted a written report to the prosecutor's office which described the phone conversation with A.H. Approximately ten months later, on January 28, 2008, A.H. and her mother spoke to Detective Spruill and an assistant prosecutor. At this meeting, A.H. recanted her allegations, claiming that no sexual abuse had occurred. A.H. explained that she had lied because, among other reasons, she felt no one in her family was paying attention to her. Despite the recantation, the prosecutor's office sought to indict Coley. The case was presented to a grand jury in February 2008, but no indictment was issued.

In August 2008, Coley, then represented by counsel, filed the present action alleging federal civil rights and state law causes of action based upon his arrest, incarceration, and prosecution.[1] The District Court granted the defendants' motion for summary judgment, holding that Detective Spruill had probable cause to arrest Coley and that the ECPO was entitled to immunity under the Eleventh Amendment.[2] Coley appealed.

We have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over an

---

[1] In addition to Detective Spruill and the ECPO, Coley also named as defendants the County of Essex and "John/Jane Doe" defendants. Later, however, Coley agreed to dismiss the County without prejudice and he never identified the "John/Jane Doe" defendants. Regarding the § 1983 claims, Coley alleged violations of his rights under the Fourth, Fifth and Eighth Amendments. He later conceded that there were no Eighth Amendment violations and he never disputed that his citation to the Fifth Amendment was erroneous.

[2] The District Court also dismissed a conspiracy claim and declined to exercise supplemental jurisdiction over various state law claims. To the extent that Coley challenges these dismissals on appeal, we conclude that the District Court did not err.

order granting a motion for summary judgment. Gallo v. City of Philadelphia, 161 F.3d 217, 221 (3d Cir. 1998). A grant of summary judgment will be affirmed if our review reveals that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (amended Dec. 1, 2010). "We review the facts in the light most favorable to the party against whom summary judgment was entered." Coolspring Stone Supply, Inc. v. American States Life Ins. Co., 10 F.3d 144, 146 (3d Cir. 1993).

"It is well-established that the Fourth Amendment 'prohibits a police officer from arresting a citizen except upon probable cause.'" Reedy v. Evanson, 615 F.3d 197, 211 (3d Cir. 2010) (citations omitted). "Probable cause exists where the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a reasonable person to believe an offense had been committed." United States v. McGlory, 968 F.2d 309, 342 (3d Cir. 1992). Where, as here, an arrest is made pursuant to a warrant, "[a] plaintiff may succeed in a § 1983 action for false arrest . . . if [he] shows, by a preponderance of the evidence: (1) that the police officer 'knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant;' and (2) that 'such statements or omissions are material, or necessary, to the finding of probable cause.'" Wilson v. Russo, 212 F.3d 781, 786-87 (3d Cir. 2000) (quoting Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir. 1997)).

We agree that there was probable cause to arrest Coley on March 1, 2007. At that

time, Detective Spruill knew that A.H. had given several consistent accounts of the abuse.  In addition to telling a friend, A.H. described the abuse to two DYFS workers who came to her school.  Later that day, she repeated the story to another DYFS worker.  A.H. also detailed the abuse in an interview with Detective Spruill, who was able to evaluate A.H.'s demeanor.  According to the assistant prosecutor, A.H.'s behavior and story were consistent with that of a child sex abuse victim.  For instance, A.H. had first disclosed the abuse to a friend and her version of events was consistent with a "grooming" process, whereby the abuse escalates over time.  Finally, Coley had not clearly denied the allegations in the recorded telephone conversations.

We also conclude that there is no evidence that Detective Spruill made false statements or omissions in support of the warrant.  Detective Spruill stated in a declaration that "[in] the late night or March 1, 2007, or the early morning of March 2, 2007, two officers of the Montclair Police Department and I went to the home of" a magistrate judge.  After reviewing copies of A.H's two statements and transcripts of the telephone conversations, the judge asked Detective Spruill whether she believed A.H.  Detective Spruill "responded in the affirmative."  Coley does not challenge the accuracy of A.H.'s statements, the telephone transcripts, or Detective Spruill's account of her interaction with the judge.  Rather, he asserts that Detective Spruill should have directed that A.H. be given a polygraph test and undergo a physical examination.  Significantly, however, Detective Spruill was not "required to undertake an exhaustive investigation in

6

order to validate the probable cause that, in [her] mind, already existed."[3] Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 790 n.8 (3d Cir. 2000).

Additionally, the probable cause to arrest Coley was not dispelled by the results of A.H.'s physical examination or by her statements to Detective Spruill on March 21, 2007, while Coley was still incarcerated. See Wilson, 212 F.3d at 792-93 (holding that "[r]egardless of the existence and scope of an officer's duty to seek to release a suspect when probable cause no longer exists, or the level of knowledge that he or she must have in order to trigger that duty, the interview [with a witness who provided a partial alibi] clearly did not dispel the earlier probable cause."). The physical examination "neither confirm[ed] nor exclude[d] sexual abuse" and, while A.H. changed her story to clarify that Coley had only tried to have sex with her once, she maintained that the abuse had otherwise occurred as originally reported. See Devereaux v. Abbey, 263 F.3d 1070, 1075 (9th Cir. 2001) (stating that "[i]nterviewers of child witnesses of suspected sexual abuse must be given some latitude in determining when to credit witnesses' denials and when to discount them, and we are not aware of any federal law—constitutional, decisional, or statutory—that indicates precisely where the line must be drawn."). In any event, Detective Spruill immediately provided the ECPO with a written description of the changes A.H. sought to make to her story. Cf. Sanders v. English, 950 F.2d 1152, 1162

---

[3] We also reject Coley's argument, made for the first time on appeal, that the investigation leading to the determination that probable cause existed was so inadequate as to violate his substantive due process rights. See Miller v. City of Philadelphia, 174 F.3d 368, 375 (3d Cir. 1999) (holding that liability exists only for "the most egregious official conduct" that is "so ill-conceived or malicious that it 'shocks the conscience.'" (citations and internal quotation marks omitted)).

(5th Cir. 1992) ("[F]ailure to disclose . . . undeniably credible and patently exculpatory evidence to the prosecuting attorney's office plainly exposes [defendant police officer] to liability under § 1983."). Because probable cause existed throughout Coley's incarceration, we conclude that no Fourth Amendment violation occurred.

Finally, we agree that the ECPO, to the extent that it is a governmental entity which can be sued under § 1983, is entitled to immunity under the Eleventh Amendment. Under the Eleventh Amendment, "an unconsenting State is immune from suits brought in federal courts by her own citizens." Edelman v. Jordan, 415 U.S. 651, 663 (1974). Eleventh Amendment immunity protects not only states but also state agencies, "as long as the state is the real party in interest." Fitchik v. New Jersey Transit Rail Operations, 873 F.2d 655, 659 (3d Cir. 1989) (en banc). To determine whether Eleventh Amendment immunity applies, we consider: "(1) the source of the money that would pay for the judgment; (2) the status of the entity under state law; and (3) the entity's degree of autonomy." Haybarger v. Lawrence County Adult Prob. & Parole, 551 F.3d 193, 198 (3d Cir. 2008) (citing *Fitchik*, 873 F.2d at 659). We have concluded that "[w]hen [New Jersey] county prosecutors engage in classic law enforcement and investigative functions, they act as officers of the State." Coleman v. Kaye, 87 F.3d 1491, 1505 (3d Cir. 1996). Immunity may not apply, however, when prosecutorial defendants "perform administrative tasks unrelated to their strictly prosecutorial functions, such as . . . personnel decisions." Id. Because the decision to present the case against Coley to a grand jury is clearly a law enforcement function, the ECPO qualifies for immunity. To

8

the extent that Coley's claims against the ECPO are based on training and policy decisions which required legal knowledge and discretion, the ECPO is likewise immune from suit. <u>See</u> <u>Van de Kamp v. Goldstein</u>, 129 S. Ct. 855, 861-63 (2009).

For the reasons given, we will affirm the judgment of the District Court.