**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-2031
_____

TODD SCHUTZEUS,
Appellant

v.

PENNSYLVANIA BOARD OF PROBATION AND PAROLE, in its official capacity;
ROBERTA TROY; RICHARD NOVACK; STEPHEN T. CUBBERLY, employees
of the Board of Pennsylvania and Parole; PENNSYLVANIA DEPARTMENT OF
CORRECTIONS, in its official capacity; JOHN WETZEL; ROBERT GILMORE,
Employees of Pennsylvania Department of Corrections; TRACEY OHARA;
JOE TUTTLE; TRACY SHAWLEY; OFFICER MCCOY; OFFICER JENKINS
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(W.D. Pa. Civil Action No. 2:17-cv-00412)
District Judge: J. Nicholas Ranjan
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 12, 2021

Before: MCKEE, SHWARTZ and RESTREPO, <u>Circuit</u> <u>Judges</u>

(Opinion filed:  January 6, 2022)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

PER CURIAM

Pro se appellant Todd Schutzeus appeals from the District Court's grant of summary judgment for defendants. For the reasons that follow, we will affirm the District Court's judgment.

I.

In 2001, Schutzeus pleaded guilty in the Court of Common Pleas of Allegheny County to rape and related charges involving a minor. He was sentenced to a term of three and a half to seven years' imprisonment followed by a seven-year term of probation. When the sentencing judge recited Schutzeus's sentence, he specified that the terms and conditions of Schutzeus's probation were to be set by the probation office or parole officer. At no point did the sentencing judge order that Schutzeus have no contact with children as a condition of his probation.

Schutzeus was released on probation after seven years of imprisonment. After his release, probation officer Tracey O'Hara drafted a series of conditions for Schutzeus's probation sentence, including a provision prohibiting Schutzeus from having any contact with minor children in his extended family, including his nieces. Schutzeus signed off on these conditions. Richard Novak subsequently became Schutzeus's probation officer. Several months later, the probation office discovered that Schutzeus had had contact with his minor nieces. Novak and supervisor Steven Cubberly drafted and signed a "special field report" regarding Schutzeus, which recommended adding several requirements to

2

his probation term, including that he have no contact with any minor under the age of 18. The report was submitted to the trial court and approved by the trial judge.

Novak interviewed Schutzeus, who acknowledged that he had seen his nieces, and another supervisor, Roberta Troy, recommended arresting Schutzeus. Novak subsequently arrested Schutzeus for violating the condition in the special field report that he not be in contact with minors. At a May 2007 violation of probation hearing, Schutzeus stated that he had violated a requirement of his probation. His probation was revoked, and he was sentenced to a term of up to 50 years' incarceration. After Schutzeus successfully appealed his sentence and subsequent resentencing, he was ultimately resentenced to 13 years' imprisonment.

Schutzeus then sought post-conviction relief for ineffective assistance of counsel. The Superior Court concluded that Schutzeus had not violated any term of his probation because the trial court did not originally impose a "no contact with minors" condition. Although probation conditions were proposed to the trial court in the special field report, a state statute required a judge to impose probation conditions; that responsibility could not be delegated to probation officers. The Superior Court vacated Schutzeus's revocation sentence, and, on remand in 2016, the trial court released Schutzeus from custody. Schutzeus ultimately served 9 years in prison for violating of a term of his probation that had never been lawfully imposed.

Schutzeus filed a complaint in the District Court in 2017, bringing federal and

state claims against a variety of defendants. In his second amended complaint, the operative complaint, Schutzeus named the Pennsylvania Board of Probation and Parole, and probation office employees O'Hara, Novak, Cubberly, and Troy as defendants.[1] He raised federal conspiracy and Fourth Amendment false arrest claims against the individual defendants. Among his other claims, he included state law claims of malicious prosecution and intentional infliction of emotional distress against all defendants, and state law claims of false imprisonment and abuse of process against Troy, Cubberly, and Novak. The parties filed cross-motions for summary judgment, which the District Court granted for defendants and denied for Schutzeus. Schutzeus timely appealed.

## II.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. We exercise plenary review over the District Court's grant of summary judgment for defendants.[2] See Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 265 (3d Cir. 2014). Summary judgment is appropriately granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if the evidence is sufficient for a reasonable factfinder to return a verdict for the nonmoving party. Anderson v. Liberty

---

[1] Schutzeus submitted two versions of his second amended complaint, and the District Court, after granting leave to amend, considered the amendment to include all of the claims raised in both documents.

[2] Schutzeus does not challenge the District Court's denial of his motion for summary judgment in his appellate brief, forfeiting any challenge to that decision. See United States v. Pelullo, 399 F.3d 197, 222 (3d Cir. 2005).

4

Lobby, Inc., 477 U.S. 242, 248 (1986).

III.

We agree with the District Court's grant of summary judgment for defendants.[3]

First, as defendants argued, the record contained no evidence of a conspiracy under 42 U.S.C. § 1983. "To prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under color of state law 'reached an understanding' to deprive him of his constitutional rights." Jutrowski v. Twp. of Riverdale, 904 F.3d 280, 293-94 (3d Cir. 2018) (citation omitted). At his deposition, Schutzeus testified that he had named Troy and Cubberly as defendants solely because of their positions, that he had named O'Hara because she had imposed conditions on his probation based on the sentencing judge's command, and that he had named Novak because Novak had arrested him and had helped

---

[3] Schutzeus does not challenge the District Court's rulings on all his claims. Specifically, Schutzeus raised a claim in his complaint pursuant to Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978), against the Board, as well as claims against the individual defendants that he was denied due process under the Fifth and Fourteenth Amendments at his original sentencing hearing where the judge improperly delegated setting his probation terms to a probation officer. He also alleged violations of the Pennsylvania Constitution. Because Schutzeus does not address these claims in his appellate brief, we deem any challenge to the grant of summary judgment on these claims forfeited. See Pelullo, 399 F.3d at 222. We note, however, that the District Court properly concluded that Schutzeus never identified any policy or custom that resulted in any alleged constitutional violation such that his claim could survive summary judgment. See Monell, 436 U.S. at 690-92; see also Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996). Further, no individual defendant in this case had any personal involvement in his initial sentencing hearing. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Finally, Pennsylvania does not recognize a private right of action for damages for violations of its constitution. See Jones v. City of Philadelphia, 890 A.2d 1188, 1208 (Pa. Commw. Ct. 2006) ("[N]either Pennsylvania statutory authority nor appellate case law has authorized the award of money damages for violation of the Pennsylvania Constitution.").

prepare the special field report. These actions do not demonstrate that any set of defendants "reached an understanding" to deprive Schutzeus of his constitutional rights. Schutzeus's speculation and continued insistence to the contrary is not sufficient to show that summary judgment was not warranted where the record contains no evidence of a conspiracy.

The District Court also correctly granted summary judgment for the individual defendants on Schutzeus's claims of false arrest under the Fourth Amendment because he could not establish that a constitutional violation had occurred.[4] "To state a claim for false arrest under the Fourth Amendment, a plaintiff must establish: (1) that there was an arrest; and (2) that the arrest was made without probable cause." James v. City of Wilkes-Barre, 700 F.3d 675, 680 (3d Cir. 2012); see also Groman v. Twp. of Manalapan,

---

[4] In addition to claims for damages, in his operative complaint, Schutzeus sought injunctive and declaratory relief. Specifically, he sought an injunction to enjoin defendants from a "practice of adding extra judicial criminal sanctions upon probationers and parolees," and a declaration that defendants' conduct violated his constitutional rights. See Second Am. Compl. at ECF p. 11. It is not clear from Schutzeus's appellate brief if he continues to pursue prospective relief. However, even if he does, Schutzeus is not entitled to either form of relief. As the District Court concluded, Schutzeus has never identified an existing policy by the Board of imposing conditions of probation that could be enjoined. See McNair v. Synapse Grp. Inc., 672 F.3d 213, 223 (3d Cir. 2012) ("When . . . prospective relief is sought, the plaintiff must show that he is 'likely to suffer future injury' from the defendant's conduct.") (citation omitted). His request for declaratory relief fails for similar reasons. The conditions of Schutzeus's probation expired before this action was initiated when his probationary period ended. See Commonwealth v. Karth, 994 A.2d 606, 610 (Pa. Super. Ct. 2010) ("Once [a] term of probation expires, so, too, must any conditions attached thereto."). Accordingly, and because the record does not contain evidence to support any likelihood of a future injury to Schutzeus based on the constitutional violations he has claimed, he cannot receive declaratory relief. See Already, LLC v. Nike, Inc., 568 U.S. 85, 98 (2013).

6

47 F.3d 628, 636 (3d Cir. 1995) ("A false imprisonment claim under § 1983 which is based on an arrest made without probable cause is grounded in the Fourth Amendment's guarantee against unreasonable seizures."). Probable cause determinations are informed by analyzing the totality of the circumstances. Illinois v. Gates, 462 U.S. 213, 238 (1983).

Schutzeus argues that his arrest for violating his probation could not have been supported by probable cause because, on collateral review, the Superior Court ultimately determined that the basis for his probation violation was not an enforceable term of his probation. However, "[w]hether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." See Devenpeck v. Alford, 543 U.S. 146, 152 (2004). When Schutzeus was sentenced, the sentencing judge specifically indicated that the terms and conditions of his probation were to be set by the probation office or his probation officer. He was subsequently found to be a sexually violent predator after a Megan's Law hearing. After he was released from prison, O'Hara gave Schutzeus a series of probation conditions to which he agreed in writing, including a provision preventing him from seeing his minor nieces. Novak ultimately arrested Schutzeus after Schutzeus admitted to Novak that he had seen his nieces, and at his violation of probation hearing, Schutzeus stated that he had violated a term of his probation. The Superior Court repeatedly reviewed Schutzeus's direct appeals from his probation violation sentence without noticing any issue with the

7

terms of his probation, even when discussing the no-contact provision that was later deemed invalid. See Commonwealth v. Schutzues, 54 A.3d 86, 99 (Pa. Super. Ct. 2012); see also Heien v. North Carolina, 574 U.S. 54, 66 (2014) (explaining that "[t]he Fourth Amendment tolerates. . . *objectively* reasonable" mistakes). Considering the totality of the circumstances here, probable cause existed for Schutzeus's arrest such that he cannot establish a Fourth Amendment false arrest claim against any individual defendant.

Next, as the District Court properly concluded, Schutzeus's state law claims for damages against the Board and the individual defendants in their official capacities are barred by Eleventh Amendment immunity. Eleventh Amendment immunity protects a state or a state agency from suit unless Congress has specifically abrogated the state's immunity or the state has waived its immunity. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100, 120-21 (1984); Karns v. Shanahan, 879 F.3d 504, 513 (3d Cir. 2018); see also Fitchik v. N.J. Transit Rail Operations, Inc., 873 F.2d 655, 658 (3d Cir. 1989) ("A state agency is entitled to immunity from suit in a federal court under the eleventh amendment when a judgment against it would have had essentially the same practical consequences as a judgment against the State itself.") (citation and internal quotation marks omitted). Schutzeus does not address his claims against the Board in his appellate brief, and he has identified no waiver of immunity that may be applicable in this case.[5]

---

[5] Further, "§ 1367(a)'s grant of jurisdiction does not extend to claims against nonconsenting state defendants." Raygor v. Regents of Univ. of Minn., 534 U.S. 533, 542 (2002).

The District Court also correctly concluded that Schutzeus's remaining state law claims against the individual defendants were barred by immunity pursuant to 1 Pa. Cons. Stat. § 2310, as defendants affirmatively asserted. Under that provision, the Commonwealth and its officials and employees acting within the scope of their duties are immune from lawsuits except in specified situations, see 42 Pa. Cons. Stat. § 8522, none of which is applicable here.

Under the facts of this case, the actions taken by the individual defendants fell within the scope of their employment as probation office employees. Pennsylvania law provides that an employee's action falls within the scope of employment if it: (1) is the kind that an employee is employed to perform; (2) occurs substantially within the authorized time and space limits of the employee's job; and (3) is motivated at least in part by a purpose to serve the employer; and (4) if force was intentionally used by the employee against another, the use of force was not unexpectable by the employer. See Restatement (Second) of Agency § 228; Brumfield v. Sanders, 232 F.3d 376, 380 (3d Cir. 2000) ("Pennsylvania has accepted the Restatement (Second) of Agency's definition of conduct 'within the scope of employment.'") (citation omitted).

Here, the individual defendants' actions consisted of typical actions taken by a probation officer or supervisor: (1) preparing and submitting documents such as a special field report, a violation report, and an arrest report, on probation office forms; (2) advising the state trial court on terms of probation; (3) supervising those terms; (4)

9

arresting a defendant for violating a term of probation; and (5) participating in a hearing to enforce that term. See, e.g., 61 Pa. Cons. Stat. §§ 6133 (providing the Board with the "exclusive power to supervise any person placed on probation by any judge of a court having criminal jurisdiction, when the court by special order directs supervision by the board"); 6138(b)(1) (providing that the "formal filing of a charge after parole against a parolee within for any violation of the laws of this Commonwealth shall constitute an automatic detainer and permit the parolee to be taken into and held in custody"); 6152 (authorizing parole officers to arrest without a warrant a parolee for violating parole conditions); 6153 (explaining the contours of the "supervisory relationship" of probation officers "with their offenders"). As the District Court observed, parole officers are state employees who serve the courts under the direction of their common employer, the Commonwealth government. See Haybarger v. Lawrence Cty. Adult Prob. & Parole, 551 F.3d 193, 198 (3d Cir. 2008) ("Pennsylvania's judicial districts, including their probation and parole departments, . . . . are part of the Commonwealth government rather than local entities.").

Schutzeus argues that because the Superior Court ruled that his sentencing judge had no authority to order a probation officer to set any conditions of his probation, the individual defendants could not have been working within the scope of their employment when the special field report was prepared in what he alleges was "an illicit scheme to cover for . . . O'Hara's imposition of a term of probation." See Appellant's Br. at p. 22.

10

There is no evidence in the record to support Schutzeus's theory that Novak, Troy, and Cubberly took any action to "cover for" O'Hara's imposition of terms of Schutzeus's probation that the sentencing court mistakenly delegated. "Under Pennsylvania law, even unauthorized acts may be within the scope of employment 'if they are clearly incidental to the master's business.'" See Brumfield, 232 F.3d at 381 (citation omitted). As the District Court explained in further detail, the sentencing court's lack of statutory authority to delegate the setting of any of Schutzeus's terms of probation does not negate the fact that all defendants acted within the scope of their duties as probation officers in enacting the sentencing court's explicit delegation, even if their acts were unauthorized by statute.

We recognize that Schutzeus was greatly wronged by having to serve nine years in prison for violating a term of his probation that was never lawfully enacted. However, as the District Court acknowledged, no remedy lies in the claims he has pursued in this action against these defendants. Accordingly, for the reasons above, we will affirm the judgment of the District Court