NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1091
_____

ANGEL OLIVARES,
                                        Appellant
                          v.

UNITED STATES OF AMERICA; DR. PRADIP M. PATEL, in his individual and
official capacities as Clinical Director of the Federal Correctional Institution (FCI, Fort
Dix); DR. S. SULAYMAN, in his individual and official capacities as Medical Physician
at FCI, Fort Dix; MR. C. IWUAGWU, in his individual and official capacities as Health
Services Administrator at FCI, Fort Dix; MS. YVONNE PHILLIPS, in her individual and
official capacities as Bureau and official capacities as Bureau of Prisons Chief Medical
Designator
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 1-07-cv-03476)
District Judge:  Honorable Jerome B. Simandle
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
August 5, 2011
Before:  SLOVITER, FISHER AND WEIS, Circuit Judges

Opinion filed: August 10, 2011
_____

OPINION
_____

PER CURIAM.

　　　　Angel Olivares, proceeding pro se and in forma pauperis, appeals from an

1

order granting summary judgment in favor of the defendants. For the following reasons, we will affirm.

## I.

As we write for the benefit of the parties, who are familiar with the factual context of this case, we will recite only those facts that are relevant to our analysis. Olivares filed his lawsuit on July 27, 2007, claiming that various employees of the Bureau of Prisons ("BOP") violated his constitutional rights and injured him through their negligence while he was a federal prisoner and pre-trial detainee. Olivares, who suffers from a medical condition called osteogenesis imperfecta,[1] injured his knee while incarcerated at the Metropolitan Detention Center in Brooklyn, New York. He charged that, following his post-conviction transfer to the Federal Correctional Institution at Fort Dix, New Jersey ("FCI Fort Dix"), the individual defendants—the former clinical director at FCI Fort Dix, a medical doctor at the facility, the former health services administrator, and the Chief of the BOP's Office of Medical Designations and Transportation—"engaged in conduct . . . [that was] intentional, grossly negligent, deliberately indifferent, and indicated active malice toward [his] constitutional and common law rights." Compl. ¶ 19. Olivares alleged that he should never have been sent to FCI Fort Dix in the first place, as he was assigned a BOP care level of "4," indicating that his chronic condition could not be adequately treated at the facility. And during his

2

stay, he maintained, his fears were realized: he was denied a specialized knee brace after one had been recommended by a consulting orthopedist, he was denied a walker, and he was denied necessary surgery, while prison officials refused to transfer him to a medical facility capable of treating him. Olivares believed this inadequate treatment to be the direct cause of his November 16, 2005, fall in the prison's cafeteria, which further injured his knee to the point of requiring immediate surgery. He separately accused the defendants of meddling with his medical treatment out of impermissible budgetary concerns; for example, he claimed that defendant Iwuagwu delayed his facility transfer requests "to stay within his budgetary limitations," resulting in an additional "seven months" of "daily constant pain, agony, and unnecessary suffering." Compl. ¶¶ 70, 74.

The District Court appointed counsel pursuant to 28 U.S.C. § 1915(e)(10). Following discovery, the defendants moved for summary judgment, which the District Court granted.[2] Olivares v. United States, No. 07-3476, 2010 U.S. Dist. LEXIS 133577, at *18 (D.N.J. Dec. 16, 2010). Having since been released from confinement, Olivares timely appealed pro se, and the matter proceeded to briefing. It is now ripe for review.

---

[1] "[A] group of connective tissue disorders . . . characterized by bone fragility, fractures on trivial trauma, skeletal deformity, blue sclerae, ligament laxity, and hearing loss." Stedman's Medical Dictionary 1390 (28th ed. 2006).

[2] Through counsel, Olivares opposed summary judgment; however, he did so on narrower grounds than those advanced in his original complaint, focusing on the defendants' decision—"[f]or reasons defendants cannot adequately explain"—to "disregard the orthopedist's recommendation" that they provide Olivares with special braces for his knees, a decision that was alleged to have caused his fall in November of 2005.

## II.

"We have jurisdiction pursuant to 28 U.S.C. § 1291 . . . [and we] exercise plenary review over an order granting summary judgment." Miller v. Am. Airlines, Inc., 632 F.3d 837, 844 (3d Cir. 2011). "The moving party is entitled to a judgment as a matter of law if the non-moving party fails to establish the existence of a genuine issue on an essential element of her case on which []he has the burden of proof at trial." Radich v. Goode, 886 F.2d 1391, 1395 (3d Cir. 1989). We "view all of the facts in the light most favorable to the non-moving party, who is 'entitled to every reasonable inference that can be drawn from the record.'" Reedy v. Evanson, 615 F.3d 197, 210 (3d Cir. 2010) (quoting Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 788 (3d Cir. 2000)). We may affirm for any reason supported by the record, even those not relied on by the District Court. Nicini v. Morra, 212 F.3d 798, 805 (3d Cir. 2000).

As recognized by the District Court, Olivares' constitutional claims were cognizable under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 389 (1971). And although Olivares' tort claims invoked state tort law and federal supplemental jurisdiction, they were properly interpreted as arising under the Federal Tort Claims Act (FTCA). See 28 U.S.C. § 2679(a)–(b); see also Brumfield v. Sanders, 232 F.3d 376, 379 (3d Cir. 2000)

4

**III.**

A) <u>Constitutional Claims</u>

Olivares claimed that the individual defendants[3] showed deliberate indifference to his serious medical needs, causing him extensive pain and leading to further medical crises. <u>See, e.g.</u>, Compl. ¶¶ 1, 90(b), 92. He also characterized the denial of specific medical relief as evidence of "outrageous, intentional, wanton and malicious conduct." Compl. ¶ 91.

To prevail on his Eighth Amendment claims,[4] Olivares was required to show that the defendants exhibited deliberate indifference to his serious medical needs. <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976). This test has both objective and subjective elements; with regard to the latter, it requires a showing that the defendant official knew of and disregarded an excessive risk to inmate health or safety. <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994). The subjective element distinguishes constitutional claims from those sounding in negligence and medical malpractice, which "without some more

---

[3] Olivares' constitutional claims against the individual defendants in their official capacities cannot succeed under principles of sovereign immunity. <u>See</u> <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 71 (1989); <u>Baraka v. McGreevey</u>, 481 F.3d 187, 210 (3d Cir. 2007).

[4] As defendants Patel, Sulayman, and Iwuagwu worked at FCI Fort Dix, we will construe Olivares' medical claims as attacking conduct dating from after his conviction, and will hence employ an Eighth Amendment analysis. <u>See</u> <u>Hubbard v. Taylor</u>, 399 F.3d 150, 164 (3d Cir. 2005). To the extent that some of Olivares' claims against defendant Phillips could be interpreted as addressing incidents occurring before his conviction, we find no violation of Olivares' due-process rights dating from this period. <u>See</u> <u>id.</u> at 164– 65.

5

culpable state of mind[] do not constitute 'deliberate indifference.'" Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

We turn first to whether Olivares exhausted his administrative remedies as required by the Prison Litigation Reform Act (PLRA). Under the PLRA, "[n]o action shall be brought with respect to prison conditions . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The defendants have argued that the one administrative grievance that Olivares fully exhausted cannot be fairly construed as alerting the prison to the wide range of constitutional violations he now presents.

It is uncontested that Olivares satisfied the exhaustion requirements for the grievance he filed on September 15, 2005. In that complaint, he wrote of his 23-month-long quest to "obtain the proper medical attention for an injury that [he] sustained while under the custody of the BOP," emphasizing that he had "seen [an] orthopedic specialist twice, [who had] recommended for me to be transferred to a medical referral center, where my condition and knee problem can be accurately addressed." Continuing, he wrote:

> So today, I am respectfully requesting a furlough transfer, so that I may obtain the necessary medical attention that I have been trying to receive for the past 23 months. Please be advised that due to the delay in repairing my left knee, today I am also suffering damage to my right knee. I believe the longer the delay the more injury would be caused to both legs, and perhaps I'll even end up crippled. I have exhausted all administrative remedies on such issue, have been promised treatment, but still have not received [any]; prolonging such surgery would be considered cruel and unusual punishment and even deliberate indifference on behalf of the Bureau of

6

Prisons. . . . I believe that I meet all of the criteria to meet such furlough transfer to another facility that can handle the condition that I'm presently suffering.

Throughout his appeals of this grievance, Olivares continued to focus on his desire for a medical furlough for the purpose of obtaining surgery.

We agree with the District Court that this grievance did not fairly put the BOP and its employees on notice of the knee-brace issue. The PLRA's exhaustion requirement was intended to allow "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case," as internal prison remedies might succeed in "satisfy[ing] the inmate, thereby obviating the need for litigation." Porter v. Nussle, 534 U.S. 516, 525 (2002). While Olivares' grievance did indeed serve to "notify the prison of a problem," see Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009), it isolated the concerns expressed to those involving surgery and possible relocation. As to the brace, this was insufficient. When determining whether a prisoner put prison officials on notice of a particular problem, we look to the extent of the prisoner's compliance with the prison's grievance procedures. Jones v. Bock, 549 U.S. 199, 218 (2007) ("[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."); see also Riccardo v. Rausch, 375 F.3d 521, 524 (7th Cir. 2004) (en banc). Here, notably, those procedures directed "a reasonable number of closely related issues" to be placed on a single form. 28 C.F.R. § 542.14(c)(2). The BOP expects "unrelated" issues to be grieved separately. Id. One way or another, then, Olivares was expected to place his unresolved medical complaints about knee-bracing

7

before prison officials.  He did not do so.[5]  Therefore, we find that Olivares failed to

comply with the BOP grievance process on the topic of bracing.  For that reason, the

issue is both unexhausted and procedurally defaulted.  See Spruill v. Gillis, 372 F.3d 218,

222 (3d Cir. 2004).

As to the exhausted claims, we find no genuine issue of material fact

pertaining to deliberate indifference.  The record shows that Olivares was provided with

constant medical treatment.  That he disagreed with some of the particulars of that

treatment does not, by itself, suggest the requisite mental state for a constitutional

violation.[6]  Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir.

1987).  Nor, as discussed above, does mere negligence in the preparation and completion

of administrative forms suggest an Eighth Amendment violation.  To the extent that

Olivares' incorrect classification formed the basis for relief, the defendants maintained

that they were unaware that Olivares was ever classified as a "Level 4" inmate, see, e.g.,

---

[5] More to the point, Olivares' failure to bring the matter to the prison's attention may
account, in part, for the dearth of solid record evidence addressing why the defendants
did not procure the braces even after the specialist had recommended them.

[6] In his complaint, Olivares accused the defendants of being motivated by budgetary
concerns.  He reiterated this allegation in his responses to the defendants' interrogatories,
but provided no basis for his knowledge.  See Fed. R. Civ. P. 56(c)(4) ("An affidavit or
declaration used to support or oppose a motion must be made on personal knowledge . . .
."); see also Patterson v. Cnty. of Oneida, N.Y., 375 F.3d 206, 219 (2d Cir. 2004) ("The
Rule's requirement that affidavits be made on personal knowledge is not satisfied by
assertions made 'on information and belief.'").  Accordingly, the unsupported assertions
are insufficient to imply an impermissible motive.  Cf. Durmer v. O'Carroll, 991 F.2d 64,
68 (3d Cir. 1993) (appropriate to draw adverse inference in failure-to-treat claim when
"some evidence in the record" suggested budgetary concerns as a motive for denying
treatment).

Patel Decl. ¶ 6, which jibes with the BOP's description of Level 4 classification: an inmate who needs round-the-clock monitoring and care, and who suffers "severe impairment of functioning." Olivares points to no evidence suggesting that the defendants were aware of his BOP classification. Finally, with regard to the administrative defendants, there is no affirmative showing of any personal involvement in conduct that could be characterized as unconstitutional. See Argueta v. U.S. I.C.E., ___ F.3d ___, 2011 U.S. App. LEXIS 11983, at *32 (3d Cir. June 14, 2011, No. 10-1479).

B) FTCA

"The [FTCA] authorizes private tort actions against the United States 'under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'" United States v. Olson, 546 U.S. 43, 44 (2005) (citations omitted). The FTCA adopts the substantive dimensions of the state law the Government is accused of violating. In other words, "an action under FTCA exists only if the State in which the alleged misconduct occurred would permit a cause of action for that misconduct to go forward." Carlson v. Green, 446 U.S. 14, 23 (1980).

In New Jersey, allegations of medical malpractice require, with few exceptions, the submission of an affidavit of merit as a precondition to filing suit. Failure to so file "shall be deemed a failure to state a cause of action." N.J. Stat. Ann. § 2A:53A-27 through 29 (West 2011). Olivares failed to tender the affidavit within the time

9

permitted and did not request an extension. Rather, Olivares argued that his claims fell into the "common knowledge" exception to the affidavit rule. See Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 579 (3d Cir. 2003). We do not agree. Olivares' medical problems, and the injuries flowing therefrom, were complex, and the medical negligence described in his administrative tort claim—failure to provide him with the brace, a walker, timely surgery, or an expedient transfer to another facility for medical treatment—is not of the sort that would be easily resolved without expert reference to a standard of care. To the extent that some of Olivares' FTCA complaints could be construed as alleging plain negligence instead of medical malpractice, we observe that the record does not support his claims of federal-employee negligence with regard to his delayed transfer.

## IV.

While we leave undisturbed the judgment of the District Court, we share some of Olivares' disquiet regarding the treatment he received while a prisoner at FCI Fort Dix. The record suggests that he was repeatedly misclassified; that the bureaucracy impeded his desire for swift relief from significant discomfort; and that his condition, while stable, fluctuated greatly over the course of his stay. Nevertheless, for the procedural and substantive reasons discussed above, and on the record before us, we cannot say that the defendants violated Olivares' constitutional rights, and the record does not evince a genuine issue of material fact with regard to his exhausted FTCA

10

claims. Accordingly, we will affirm the District Court's grant of summary judgment in favor of the defendants.